DECISION AND JUDGMENT ENTRY
Appellant McAlester Fuel Company ("McAlester Fuel") appeals a judgment that found it liable for unpaid invoices relating to a 1994 well-drilling contract with appellee Highland Drilling Company ("Highland Drilling"). McAlester Fuel contends that a February 1, 1995 agreement between the parties altered the terms of its payment obligations for various debts, including the amount for which the court found it liable. McAlester Fuel presents one assignment of error for our review:
 "The Trial Court erred in holding payment of the balance due plaintiff-appellee for drilling William Lang Well # 1A was not bound by the terms of the contract between the parties, dated February 1, 1995."
We find that the trial court erred in its determination that McAlester Fuel was liable for the amount allegedly due for Highland Drilling's services on the William Lang #1A well. Accordingly, we reverse that judgment.
 I.
In 1993, McAlester Fuel began efforts to drill a series of oil and gas wells in Washington County. Toward that end, McAlester Fuel entered into a series of drilling contracts with Highland Drilling. This case involves four of these contracts, which called for Highland Drilling to drill four wells known as "Ohio Power #1," "Ohio Power #2," "Ohio Power #3," and "William Lang 1A." In exchange for Highland Drilling's services on these wells, McAlester Fuel contracted to pay a sum of money for each well. The contract price for each well varied depending on various factors, including the depth of the particular well. Michael Young, as president of Highland Drilling, and Philip Brown, as vice-president of McAlester Fuel, signed the contracts on behalf of Highland Drilling and McAlester Fuel, respectively.[1]
Highland Drilling completed the Ohio Power wells and the William Lang #1A well as specified in the contracts. McAlester Fuel did not, however, pay the total amounts due under these contracts to Highland Drilling. Highland Drilling recorded a mechanic's lien on September 1, 1994, which stated that $32,836.54 remained unpaid, including interest, for services relating to the William Lang #1A well. Highland Drilling did not record mechanic's liens on any of the Ohio Power wells.
In May 1997, Highland Drilling filed a complaint against McAlester Fuel in the Washington County Court of Common Pleas. The complaint sought: (1) judgment for amounts due for the Ohio Power wells and the William Lang #1A well, (2) foreclosure of its mechanic's lien on the William Lang #1A well, (3) prejudgment interest, and (4) attorney's fees. The complaint alleged that McAlester Fuel owed $1,109.85 for Ohio Power #1, $13,650 for Ohio Power #2, $4,751.15 for Ohio Power #3, and $31,330.80 for William Lang #1A.[2] During a trial to the court, Highland Drilling presented testimony regarding the work it performed, the amounts due, its perfection of a mechanic's lien on the William Lang #1A well, and the failure of McAlester Fuel to remit full payment for the various wells.
McAlester Fuel defended at trial on the basis of a letter agreement that purportedly modified the payment schedule for monies owed to Highland Drilling. Edward G. Wallace, the "Exploration Manager" of McAlester Fuel, testified to sending a letter to Mr. Brown purporting to address "various old invoices as of yet unpaid" by McAlester Fuel to Mr. Brown and/or Mr. Brown's "affiliated companies." The letter proposed an agreement consisting of four principal paragraphs. Paragraph 3 of the letter agreement stated:
 Minimum payments on old invoices unpaid to any of Philip Brown's affiliated companies, including Omega Brine, Philip H. Brown Companies, Philip Brown Petroleum, Philip H. Brown Individually, Phillip H. Brown Service Company, and Highland Drilling Company, aggregating $314,432.57, will be paid out of a carved out oil and gas payment in that exact amount to be paid on a monthly basis from a 20% working interest in the existing producing wells drilled and completed within the confines of Washington County, Ohio as of this date and including any production which may be found in the Ohio Power #2 well.
Mr. Wallace signed this letter agreement on behalf of McAlester Fuel. Mr. Brown signed the letter agreement in his individual capacity "and for the various Phillip Brown companies enumerated" in the agreement. Mr. Wallace also testified that McAlester Fuel had paid $436,207.60 to Mr. Brown's companies. This amount, according to Mr. Wallace, encompasses the $314,432.57 due to Mr. Brown "and his affiliated companies" as described in the February 1, 1995 letter agreement. Mr. Wallace also testified that the William Lang #1A well had not been "fractured" to begin producing oil and gas. Thus, at the time of trial, the William Lang #1A well was not capable of production.
At the close of trial, the court entered judgment against McAlester Fuel in the amount of $31,330.80, which represented the amount due for Highland Drilling's services on the William Lang #1A well. Although it found the February 1, 1995 letter agreement to be a valid contract between McAlester Fuel and Highland Drilling, the court determined that the William Lang #1A well was not part of that agreement. The court determined that the William Lang #1A well "has never been completed for production and is not capable of producing oil and/or gas from and after the time the drilling process was completed in April 1994 to the date of trial * * *." However, the court did not enter judgment for the alleged amounts due for the Ohio Power wells. Although the court found McAlester Fuel to owe a total of $8,502.15 for these three wells, it found that the February 1, 1995 letter agreement controlled McAlester Fuel's payment obligations. Thus, the court declared that Highland Drilling was entitled to a monthly payment for the Ohio Power wells out of a 20% working interest from the production of the wells described in the letter agreement. The court further found that Highland Drilling was entitled to foreclose the mechanic's lien recorded on the William Lang #1A well. The court did not award prejudgment interest or attorney's fees. McAlester Fuel filed a timely notice of appeal.
 II.
McAlester Fuel's assignment of error requires us to determine a single issue: whether the February 1, 1995 letter agreement between the parties included the William Lang #1A well. The trial court decided that the February 1, 1995 letter agreement was a valid and binding contract between McAlester Fuel and Highland Drilling.[3] However, the court interpreted the agreement to exclude the William Lang #1A well from its description of McAlester Fuel's payment obligations. Because the letter agreement did not cover the William Lang #1A well, the court determined that McAlester Fuel was bound to the original drilling-contract for that well and presently owed Highland Drilling the $31,330.80 that was past due.
The issue before us is one of contract interpretation. The construction of a written contract is a question of law, which we review de novo. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311,313; Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Our goal in construing a written contract is to discover and effectuate the intent of the parties, as evidenced by the contractual language. Skivolckiv. E. Ohio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus; see, also, Kelly v. Medical Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus (parties' intent presumed to reside in contract language). Extrinsic evidence is admissible to ascertain the intent of the parties only when the contract is unclear or ambiguous, or where surrounding circumstances give plain language special meaning. Shifrin v.Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, syllabus;Graham, 76 Ohio St.3d at 314. When faced with an ambiguity, we will construe ambiguous contract language against the party who drafted it. Cent. Realty Co. v. Clutter (1980), 62 Ohio St.2d 411,413. However, when a contract's terms are clear and unambiguous, we will give effect to that language. We will not "in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."Alexander, 53 Ohio St.2d at 246.
McAlester Fuel argues that the letter agreement "clearly indicates" an intent to substitute its terms for those of all prior agreements with Highland Drilling.[4] McAlester Fuel argues that the letter agreement does not expressly exclude the William Lang #1A well from its coverage, meaning that the well must be included in the agreement. Conversely, Highland Drilling interprets the letter agreement to cover only those wells that were producing oil and gas at the time Mr. Wallace and Mr. Brown executed it. Because the William Lang #1A well was not productive, Highland Drilling argues it was not included within the terms of the agreement.
The heart of the parties' dispute lies in the wording of Paragraph 3 of the letter agreement, which purports to arrange for payment of old invoices due to Highland Drilling and other "affiliated companies" of Mr. Brown. The paragraph states that McAlester Fuel would pay the outstanding invoices "out of a carved out oil and gas payment * * * to be paid on a monthly basis from a 20% working interest in the existing producing wellsdrilled and completed within the confines of Washington County, Ohio as of this date * * *." (Emphasis added.) The trial court construed the emphasized portion to exclude the William Lang #1A well because that well was not producing oil or gas at the time the parties executed the letter agreement. In essence, the trial court interpreted the letter agreement to provide for payment of only those invoices relating to wells that were actually producing oil and gas as of February 1, 1995. Highland Drilling urges us to defer to the trial court's interpretation. It contends that the letter agreement is "not clear and not unambiguous" in its terms and that the trial court therefore crafted a plausible interpretation, which excludes the William Lang #1A as a "separate and distinct proposition" from the remaining debts addressed. We believe this interpretation is erroneous because it runs contrary to the agreement's unambiguous language.
Paragraph 3 of the letter agreement specifically encompasses unpaid invoices to "any of Phillip Brown's affiliated companies including * * * Highland Drilling Company * * *." (Emphasis added.) It is undisputed that the invoices pertaining to the William Lang #1A well remained unpaid as of February 1, 1995, the date the parties executed the letter agreement. Contrary to the trial court's interpretation, the letter agreement does not limit the category of unpaid invoices covered by Paragraph 3 to those that pertain to actual oil and gas producing wells. Paragraph 3's plain language does just the opposite. By the paragraph's terms, McAlester Fuel would make "payments on old invoices" to Phillip Brown's "affiliated companies" (including Highland Drilling) by making monthly payments out of proceeds from the existing producing wells in Washington County and (future) production from the Ohio Power #2 well. Paragraph 3 does not contain any words of limitation that restrict its application to invoices from existing producing wells. The letter agreement allowed McAlester Fuel to utilize an identifiable income stream from which it would pay its outstanding debts. The trial court's interpretation would be correct if Paragraph 3 provided that "payments on old invoiceson existing producing wells unpaid to any of Phillip Brown's affiliated companies" would be paid from a 20% working interest in the existing producing wells in Washington County. The letter agreement, however, does not say this. In matters of construction, courts must give effect to the words used and not insert words that are not used. See Cleveland Elec. Illum. Co. v.Cleveland (1988), 37 Ohio St.3d 50, paragraph three of the syllabus. Thus, the fact that the William Lang #1A well was not ready for production did not exclude it from the terms of the letter agreement's payment arrangement.
However, even if the letter agreement includes payments on nonproducing wells, Highland Drilling maintains that the trial court's judgment should stand. Highland Drilling points to an "Addendum" to the agreement, which reads:
 The purpose of this letter agreement is not to create, nor execute a permanent assignment of royalties to be paid by [McAlester Fuel] to Phillip H. Brown Companies, et al, [sic] rather, it is an agreement between the parties hereto to arrive at a solution as to the collection of payments for gas and oil and an equitable payment of past and accruing debts. However, by agreeing to the stipulation herein, Phillip H. Brown companies, et al, [sic] do not waive any rights as to mechanic liens or other remedies under civil law, in event the proceeds from the wells do not may all the bills * * *. (Emphasis added.)
Because of this addendum, Highland Drilling argues that it had every right to bring suit for the balance due on the William Lang #1A well, regardless of whether it was included in the terms of the letter agreement. Highland Drilling further argues that it is within its rights under the addendum to foreclose the mechanic's lien on the William Lang #1A well. We disagree with the appellee's interpretation of the addendum.
The addendum does expressly provide that Mr. Brown's "affiliated companies" do not waive any remedies by virtue of the letter agreement. However, we must not take specific language of the addendum out of context. In interpreting contract language, the intent of the parties will be derived from considering the whole agreement, and not from detached or isolated parts of it.Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166,172; see, also Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361. The addendum also conditions the right to exercise other remedies upon the "event the proceeds from the wells do not pay all the bills * * *." As a whole, the letter agreement sought to arrange a payment schedule for various unpaid invoices from McAlester Fuel to Mr. Brown's "affiliated companies," including Highland Drilling. The letter agreement provides for McAlester Fuel to pay monies from specified sources (i.e., the "20% working interest in the existing producing wells" specified in Paragraph 3) and on a specified timetable (i.e., payment on a monthly basis). In short, the letter agreement provides a payment plan for McAlester Fuel to meet its outstanding financial obligations to Mr. Brown's "affiliated companies." Read in conjunction with the entire letter agreement, the addendum merely provides that Mr. Brown's "affiliated companies" could pursue other legal remedies in the event that the terms of the letter agreement fail to result in sufficient income to pay McAlester Fuel's various debts. The trial court concluded that there was income flowing from the Washington County wells enumerated in the letter agreement, which was the principal reason it declined to enter judgment on amounts McAlester Fuel allegedly owed on the Ohio Power wells. In the words of Highland Drilling's appellate brief, the trial court decided that the amounts owed on the Ohio Power wells "could and should be paid from well income pursuant to the letter agreement * * *." Our determination that the William Lang #1A well is included within the terms of the letter agreement similarly means that unpaid invoices from that well should be paid according to the terms of the letter agreement. Thus, Highland Drilling's right to foreclose the mechanic's lien has not matured. See R.C.1311.21(B) (providing that "no process shall issue or proceedings be had to enforce a judgment for [a mechanic's lien claim] until the same matures")
Accordingly, we hold that the trial court erred in finding McAlester Fuel liable for the $31,330.80 owed on the William Lang #1A well. The language of the February 1, 1995 letter agreement encompasses the unpaid invoices relating to the William Lang #1A well. We therefore reverse the judgment of the trial court and remand with instructions to enter judgment in accordance with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
For the Court
BY: William H. Harsha, Judge.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] At the time the parties signed the contracts for drilling these four wells, Mr. Brown was also a vice-president of Highland Drilling. Mr. Brown's role as an officer of McAlester Fuel and several other companies with which McAlester Fuel did business, including Highland Drilling, was the subject of a federal lawsuit. McAlester Fuel co. v. Brown (filed Sept. 18, 1998), S.D.Ohio # C2-98-940.
[2] Highland Drilling later filed an amended complaint, alleging amounts due of $1,000, $2,751, and $12,431 for Ohio Power #1, #2, and #3, respectively. The trial court did not consider the amended complaint, as Highland Drilling filed it without leave of court and after McAlester Fuel had filed its answer. See civ.R. 15(A). As for the William Lang #1A well, the amount alleged in the complaint differed from that stated in the mechanic's lien. The amount alleged in the complaint did not include interest.
[3] During trial, Highland Drilling argued that it was not bound by the letter agreement, notwithstanding Mr. Brown signing the agreement on behalf of his "affiliated companies," which specifically included Highland Drilling. However, neither party has appealed this determination by the trial court. Thus, whether the letter agreement is a binding contract between the parties is not an issue before us on this appeal.
[4] McAlester Fuel mischaracterizes the letter agreement as a "novation, " which substituted a new legal obligation in place of its past drilling contracts with Highland Drilling. A novation constitutes an agreement between the original parties to a contract and a third party. A novation agreement releases an original party from his contractual obligation, with the third party substituted in his stead. See Hunter v. BPS Guard Services,Inc. (1995), 100 Ohio App.3d 532, 542, citing Bacon v. Daniels
(1881), 37 Ohio St. 279, paragraph two of the syllabus. McAlester Fuel has identified no "third party" that substituted for it and discharged McAlester Fuel's contractual obligations. McAlester Fuel's mischaracterization of the letter agreement, however, is of no consequence. The trial court decided that the letter agreement was a valid instrument that modified the terms of the prior drilling contracts between McAlester Fuel and Highland Drilling.