CITY OF PIQUA, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

(No. 74-264—Decided December 18, 1974.)

88

*Mr. L. Craig Hallows*, director of law, for appellant.

*Mr. William J. Brown*, attorney general, *Mr. Keith F. Henley* and *Mrs. Cheryl H. Keith*, for appellee Public Utilities Commission.

*Mr. J. R. Newlin, Mr. W. E. Herron* and *Mr. S. F. Koziar*, for appellee Dayton Power and Light Company.

WILLIAM B. BROWN, J.   The question presented is whether a municipally owned or operated public utility may utilize the provisions of R. C. 4905.261 to protest an alleged duplication of service by another public utility.

R. C. 4905.261, in pertinent part, reads:

"Whenever a public utility proposes to furnish or furnishes electric energy to a consumer and which consumer is being furnished or was being furnished electric energy by another public utility, the latter public utility may file a complaint with the Public Utilities Commission protesting the furnishing of service by the other public utility.   * * * The commission upon finding that the complaining public utility has been furnishing or will furnish an adequate service to such consumer and that the public utility complained against will duplicate facilities of the complainant, shall order the public utility complained against not to furnish electric energy to such consumer.

"* * *

"Public utility as used in this section includes utilities which operate their property not for profit as well as utilities which operate their property for profit."

R. C. 4905.261 contemplates a proceeding before the Public Utilities Commission between a "public utility" as complainant and a "public utility" as respondent. Appellant contends that the statute's definition of "public utility" includes *all* public utilities because the property of any public utility is operated either for profit or not for profit.

However, we need only look to R. C. 4905.02, where the term "public utility" is defined generally, to determine that the phrases "utilities which operate their property

not for profit" and "utilities which operate their property for profit" are terms of art used to depict only two of several general types of utilities.

R. C. 4905.02 provides:

"As used in Sections 4905.01 to 4905.64, inclusive, of the Revised Code, 'public utility' includes every corporation, company, copartnership, person, or association, their lessees, trustees, or receivers, defined in Section 4905.03 of the Revised Code, including all telephone companies, but excepting such other public utilities as operate their utilities not for profit, such other public utilities as are owned or operated by any municipal corporation, and railroads as defined in Sections 4907.02 and 4907.03 of the Revised Code."

Included in the R. C. 4905.02 definition of "public utility" are: (1) All entities defined in R. C. 4905.03, and (2) all telephone companies. Specifically excluded from the general definition of "public utility" are: (1) All utilities which operate not for profit, (2) all utilities owned or operated by a municipal corporation, and (3) all railroads as defined in R. C. 4907.02 and R. C. 4907.03.

Interpreting R. C. 4905.261 in light of R. C. 4905.02, we find that the definitional portion of R. C. 4905.261 includes within the term "public utility" only one of three categories of utilities excluded by R. C. 4905.02, namely, "public utilities as operate their utilities not for profit."

Accordingly, we hold that the term "public utility," as used in R. C. 4905.261, does not include a public utility which is owned or operated by a municipal corporation. Such municipal utility may not file a complaint with the Public Utilities Commission, pursuant to R. C. 4905.261, protesting an alleged duplication of service by another public utility.

The order of the commission is neither unreasonable nor unlawful, and is, therefore, affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

CELEBREZZE, J., dissents.