CITY OF CLEVELAND, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Cleveland *v.* Pub. Util. Comm. (1984), 10 Ohio St. 3d 18.]

(No. 83-699—Decided March 15, 1984.)

*Mr. John D. Maddox,* director of law, *Ms. June W. Wiener* and *Mr. Craig A. Glazer,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Robert S. Tongren* and *Mr. Donn D. Rosenblum,* for appellee.

*Messrs. Squire, Sanders & Dempsey, Mr. Richard W. McLaren, Jr.,* and *Mr. Alan P. Buchmann,* for intervening-appellee.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. William S. Newcomb, Jr.,* for *amicus curiae,* Ohio Cable Television Assn.

*Per Curiam.* R.C. 4905.02 provides:

"As used in Chapter 4905. of the Revised Code, *'public utility' includes every * * * company, * * * defined in Section 4905.03 of the Revised Code, including all telephone companies, but excepting * * *, such * * * public utilities as are owned or operated by any municipal corporation * * *."* (Emphasis added.)

According to this definition, a municipally owned utility is not a public utility for purposes of R.C. Chapter 4905.

R.C. 4905.71 reads in pertinent part as follows:

"(A) *Every* telephone, telegraph, or electric light *company, which is a public utility as defined by section 4905.02 of the Revised Code, shall permit,* upon reasonable terms and conditions and the payment of reasonable charges, *the attachment of any * * * apparatus to its poles, * * * by any person or entity other than a public utility * * *."* (Emphasis added.)

Appellant submits that R.C. 4905.71, inasmuch as it requires intervening-appellee to permit pole attachments "by any person or entity *other than a public utility,"* requires intervening-appellee to permit pole attachments by a municipal utility.

To the contrary, the tariffs proposed by intervening-appellee and approved by the commission contain language specifically placing municipal utilities beyond their scope. The question presented therefore is whether the phrase, "any person or entity other than a public utility," as found in R.C. 4905.71(A), includes municipal utilities. We hold that it does not.

Appellant argues that the definition of "public utility," found in R.C. 4905.02, *by its own terms* controls all appearances of those words in R.C. Chapter 4905, including the phrase "other than a public utility" found in R.C. 4905.71. In *Piqua* v. *Pub. Util. Comm.* (1974), 40 Ohio St. 2d 87 [69 O.O.2d 438], this court held in paragraph one of the syllabus that "[t]he term 'public utility,' as used in R.C. 4905.261, does not include a public utility which is owned or operated by a municipal corporation." It was reasoned that a municipal utility may not file a complaint alleging the duplication of services pursuant to R.C. 4905.261 because the right to file such a complaint accrues

only to a "public utility" which, for purposes of R.C. Chapter 4905, does not include a municipal utility.

The commission and intervening-appellee argue that the General Assembly, by the use of the modifying phrase, "as defined by section 4905.02 of the Revised Code," following the *first* appearance of "public utility" in R.C. 4905.71, and the failure to use the same modifying phrase following the *second* appearance of that term in that section, illustrated its intention to exempt the second appearance of that term from the definition found in R.C. 4905.02. They submit that the General Assembly did not omit the modifying language without reason and suggest further that it omitted such language because it did not intend to modify the second use of the term.

This court has consistently held that, " '[i]n ascertaining the legislative intent of a statute, "it is the duty of this court to give effect to the *words used* \* \* \*, not to delete words used *or to insert words not used.*" ' " *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70. Although the statutory definition of a public utility specifically excludes municipal utilities, it does so precisely to avoid the unconstitutional result urged by appellant herein. It is only by a twist of logic, *i.e.*, a double exclusion, that municipal utilities would be included in the the class described as "any person or entity other than a public utility." As this court has often said, "[t]he General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. \* \* \*" *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47 [45 O.O.2d 327], paragraph four of the syllabus.

Appellant contends that if the General Assembly did not intend that R.C. 4905.71 grant municipal utilities the right to make pole attachments, then it has unlawfully restricted municipal utilities in contravention of Section 4, Article XVIII of the Ohio Constitution. *Swank* v. *Shiloh* (1957), 166 Ohio St. 415 [2 O.O.2d 401].

To the contrary, R.C. 4905.71 not only grants certain rights to persons and entities other than public utilities, but empowers the commission to determine just and reasonable charges, terms, and conditions for the exercise of those rights. If the General Assembly had intended to grant municipal utilities rights under that section, then it would have subjected them to regulation by the commission, a result expressly rejected by the laws of this state.

In order to construe R.C. 4905.71 so as not to reach an unconstitutional result, it must be assumed that the term "public utility" when used in the phrase, "other than a public utility," refers to public utilities *generally*. That is exactly what the commission found.

Appellant further contends that the commission's order approved a tariff which reaches beyond the authority provided by the statute. More specifically, appellant suggests that the language of the approved tariff, which provides that attachments "\* \* \* will not be permitted where the attachments will interfere with the Company's own service requirements, or will be prejudicial to the economy, safety or future needs of the Company's service or

the use of its facilities by others with prior rights to such use," exceeds the authorized limits set forth in R.C. 4905.71. Those limits provide that attachments shall be permitted, "* * * so long as the attachment does not interfere, obstruct, or delay the service and operation of the * * * company or create a hazard to safety."

A comparison of the tariff and statute shows that the language of both is general in nature. They are not, as appellant notes, identical. However, they do not differ to such a degree that the commission, in approving the tariff, should be considered to have made a finding contrary to law and reason.

This court has consistently held that the commission's findings and order will not be disturbed unless it appears from the record that such findings and order are manifestly against the weight of the evidence and so clearly unsupported by the record as to show misapprehension or mistake or willful disregard of duty. *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393], paragraph eight of the syllabus. In its order the commission established the scope of R.C. 4905.71 as well as the reasonableness of the tariff proposed pursuant thereto. Both findings are supported by the record. Accordingly, the order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN and LOCHER, JJ., dissent.

LOCHER, J., dissenting. The majority's hypertechnical reading of R.C. Chapter 4905 promulgates the very difficulties it purports to correct. Although the majority correctly observes that the first use of the word "public utility" in R.C. 4905.71 does not include a municipal utility like Cleveland's municipal light facility ("Muny Light"), a satisfactory rationale is not given for rejecting the same meaning for those identical words later used in the same sentence. Thus the words "public utility" used in the clause, "by any person or entity other than a *public utility*" (emphasis added), would retain their statutorily defined meaning which specifically excludes municipal utilities.[1] In the context of R.C. 4905.71, statutory interpretation is a simple application of the plain meaning rule mandated by R.C. 1.42:

"Words and phrases shall be read in context and construed according to

---

[1] R.C. 4905.02 defines "public utility," in pertinent part as follows:

"As used in Chapter 4905. of the Revised Code, 'public utility' includes every corporation, company, copartnership, person, or association, * * * *but excepting* such other public utilities as operate their utilities not for profit, *such other public utilities as are owned or operated by any municipal corporation* * * *." (Emphasis added.)

the rules of grammar and common usage. *Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.*" (Emphasis added.)

The majority correctly states, " '[t]he General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. * * *' *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47 [45 O.O.2d 327], paragraph four of the syllabus." Yet, it is difficult to conceive of any reason for the legislature to have intended for Muny Light to erect poles next to existing CEI poles to serve identical purposes. The economies involved, as well as aesthetic considerations, reject compelling a municipal utility to exercise eminent domain and erect a forest of brand new poles next to perfectly adequate existing poles for no apparent purpose.

With respect to the majority's constitutional analysis, it is evident the majority's view unconstitutionally regulates a municipal utility by ruling that a utility has less of a right to use a utility pole than "any person or entity other than a public utility." By mandating that municipal utilities may *not* use public utility poles the majority's fear of unconstitutional regulation of municipal utilities, in contravention of Section 4, Article XVIII of the Ohio Constitution, is realized. See, also, *Swank* v. *Shiloh* (1957), 166 Ohio St. 415 [2 O.O.2d 401], paragraph one of the syllabus which states: "The power to acquire, construct, own or lease and to operate a utility, the product of which is to be supplied to a municipality or its inhabitants, is derived from Section 4, Article XVIII of the Constitution, and the General Assembly is without authority to impose restrictions or limitations upon that power. (*Village of Euclid* v. *Camp Wise Assn.*, 102 Ohio St. 207, and *Board of Education of City School Dist. of Columbus* v. *City of Columbus,* 118 Ohio St. 295, approved and followed.)" If a municipal utility desires to use public utility poles it can either accept the "just and reasonable" rates promulgated by the commission or reject the rates in which eventuality it may put up its own poles. The municipal utility is not, however, being regulated any more than a phone company customer is regulated by paying the phone bill. R.C. 4905.71 is construed to actually *preclude* the municipal utility from using the poles — a result that has been recognized for decades as *de facto* regulation. Regulation is also "the power 'to prescribe the rule by which commerce is governed' " *and embraces prohibitory regulations. United States* v. *Darby* (1941), 312 U.S. 100, 113.

Also troubling is the majority's analysis of what is essentially the commission's judicial review of the language of R.C. 4905.71. Such a review should be identified for what it is and not be treated as an evidentiary finding which would fall under the "manifest weight of evidence and so clearly unsupported by the record as to show misapprehension or mistake or willful disregard of duty" test.

To reiterate, I have four concerns with the majority opinion. First, under R.C. 4905.02, for the purposes of R.C. Chapter 4905, a municipal utility *is not* a public utility. Second, treating a municipal utility like a public utility by

precluding the municipal utility from using a public utility's poles is regulation. Moreover, the regulation of municipal utilities is unconstitutional pursuant to Section 4, Article XVIII of the Ohio Constitution. Third, a commission determination of a legal question should not be given the same analytical deference as an evidentiary determination. Finally, the practical effect of this decision will be to impose tremendous and unwarranted economic costs on municipal utilities. Entire tracts of timberland will be uprooted for redundant poles and the skyline will be dominated by a jungle of electrical lines.

Accordingly, for the reasons stated above, I must dissent.

W. BROWN, J., concurs in the foregoing dissenting opinion.