CLEVELAND ELECTRIC ILLUMINATING COMPANY, APPELLANT, *v.*
CITY OF CLEVELAND ET AL., APPELLEES.

[Cite as Cleveland Elec. Illum. Co. *v.* Cleveland (1988),
37 Ohio St. 3d 50.]

(No. 87-852—Submitted February 16, 1988—Decided May 25, 1988.)

*Squire, Sanders & Dempsey, Daniel J. O'Loughlin, Frank J. Pokorny, Alan D. Wright* and *Carl E. Chancellor,* for appellant.

*Calfee, Halter & Griswold, John E. Gotherman, Mark I. Wallach, Marilyn G. Zack,* director of law, and *June M. Wiener,* for appellees.

*Kelley, McCann & Livingstone, Stephen M. O'Brien* and *Daniel S. Strouse,* urging affirmance for *amicus curiae,* Ohio Municipal Attorneys Assn.

*Patrick A. D'Angelo,* urging reversal for *amicus curiae,* Cleveland Police Patrolmen's Assn.

DOUGLAS, J. The question we must decide today is whether the Charter of the city of Cleveland forbids the release of Muni Light from any obligation to repay the sum of $29,450,273 previously expended by the city for the benefit of Muni Light. We hold that the city charter prohibits the use of tax-generated funds to subsidize municipally owned public utilities such as Muni Light.

The Charter of the city of Cleveland contains the following pertinent provisions:

"§ 41 Transfer of Appropriations.

"Upon the written recommendation of the mayor, the council may at any time transfer an unencumbered balance of an appropriation made for the use of one department, division or purpose to any other department, division or purpose, *but no such transfer of revenues or earnings of any non-tax supported public utility to any other purpose shall be made* [with certain exceptions not relevant here] * * *." (Emphasis added.)

"§ 111 General Powers and Duties.

"The Director of Public Utilities shall manage and supervise all *non-tax supported public utility* undertakings of the City, *including all Municipal water, lighting, heating, power and transmission enterprises,* but excluding mass transportation enterprises, and such other utilities now owned or hereafter acquired by the City of Cleveland as may be placed under any management and supervision other than that of the Director of Public Utilities." (Emphasis added.)

The meaning of the words "non-tax supported" in the above charter provisions is the determinative issue in this case. Appellees contend that these words do not constitute a prohibition on the use of tax revenues to support the city's ownership and operation of its public utilities. We do not agree. Our review of the relevant charter provisions compels us to conclude that the words "non-tax supported" were intended to establish that municipally owned and operated utilities shall be self-supporting enterprises independent of public subsidies.

Section 111 of the charter, quoted above, provides that the director of public utilities "shall manage and supervise all *non-tax supported* public utility undertakings of the City, *including all Municipal water, lighting, heating, power and transmission enterprises* * * *." (Emphasis added.) Obviously, all municipally owned and operated public utilities, with certain stated exceptions, are intended to be *non-tax supported.* Such public utilities are specifically defined as including municipal lighting and power enterprises, of which Muni Light is clearly an example.

Appellees place much emphasis on the absence from the charter of a specific provision prohibiting municipally owned public utilities from receiving support from tax monies. In our view, however, this prohibition is

proclaimed by the very use of the words "non-tax supported public utility." Appellees' proposed conclusion can only be sustained by a disregard for that phrase as it is used throughout the Cleveland Charter. A court construing a provision in a city charter, statute, contract or other writing may not ignore the existence of any word or phrase. The inadvisability of such an approach is particularly apparent in the case before us, where the consequences of ignoring the phrase in question could be extreme.

It cannot be disputed that once the debt is excused, Muni Light becomes a tax supported utility, since the money advanced was taken from tax-generated city funds. If this change in status from a non-tax supported to a tax supported utility is permitted to occur, then all the provisions in the Cleveland City Charter relating to *non-tax* supported public utilities will no longer apply to Muni Light. For example, the authority given by Section 111 to the city's director of public utilities to "manage and supervise all non-tax supported public utility undertakings of the City * * *" will no longer include any authority over the (now tax supported) Muni Light. Section 112, governing the fixing of rates charged by *non-tax supported* public utilities, will likewise have no application to Muni Light. Section 41 would no longer prohibit the transfer of Muni Light revenues or earnings to any other purpose.

The practical effects of appellees' proposed approach could be far-reaching. Consider a fact pattern wherein a city (here Cleveland) decides to provide support to its municipally owned *water* public utility from the city's tax-generated general fund. It would seem that the water utility would no longer be "non-tax supported." It would follow then, as noted above, that the

section of a charter (herein Section 41) that prohibits transfer of revenues or earnings from the utility to any other purpose would be inoperative—because the utility is no longer non-tax supported and thus not governed by the restriction. Thus, a water rate, exceeding that which was necessary to operate the water utility, could be charged and the excess revenues transferred to pay for other activities not in any way connected with the production and sale of water.[2] In our judgment, appellees' approach would provide a way for city councils and administrations to raise general operational money through rates instead of requiring that such money be raised through traditional tax measures. The excessive rate becomes, in effect, a hidden tax.

This result is clearly untenable. When the larger picture is considered, the importance of the phrase "non-tax supported" becomes plain. Contrary to the view advanced by appellees, this phrase does have meaning—a crucial meaning. Tax-generated funds may not be used to support Muni Light.

In matters of construction, "* * * it is the duty of this court to give effect to the words used, *not to delete words used or to insert words not used.*" (Emphasis added.) *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127, 49 O.O. 2d 445, 446, 254 N.E. 2d 8, 9. It is argued that by interpreting the charter as prohibiting tax support of municipally owned public utilities, this court is inserting words into the charter, since that document contains no provision specifically declaring that such support is forbidden. However, this approach overlooks the fact that the rule of construction cited above consists of

_____

[2] We are not unaware of the provisions of R.C. 743.05.

several imperatives. Courts are commanded to refrain from inserting or deleting words. However, we are also directed to "give effect to the words used * * *." *Id.* The Cleveland City Charter uses the words "non-tax supported" in connection with municipally owned public utilities, not just once but several times. We cannot pretend that these words do no exist or that they have no meaning.

Nor are the words "non-tax supported" *limited* in their prohibitive effect to outright transfers of tax-generated funds to utilities such as Muni Light. Support in any form is forbidden where such support is derived from tax revenue. Any money advanced to Muni Light from the general fund or other tax-generated source on terms substantially more favorable than those generally available in the commercial market constitutes "support" to the extent that Muni Light enjoys a benefit therefrom. Where a "non-tax supported" utility receives an advancement from a tax-generated fund on terms which call for, as an example, interest payments far lower than the prevailing rate, or which set forth an unrealistically lengthy repayment schedule, the advancement provides "support" in much the same manner as an outright gift. Should this occur, the utility would become tax supported in violation of the city charter.

We agree with appellees that the Ohio Attorney General Opinions cited by appellant[3] regarding advancements are not applicable. The advancements approved in the situations described therein were made with the expectation of prompt and full repayment to the general fund. Obviously, no such expectation existed in the case before us today, since Muni Light was relieved of its obligation to reimburse the general fund. Given the prohibition contained in the Cleveland City Charter, any "advancement" from the general fund to a non-tax supported municipal utility would be forbidden where, as here, there is no anticipation of full and prompt repayment.

We hold, therefore, that a municipality may not support a municipally owned public utility with monies derived from tax-generated revenue where the city charter provides that such utilities are to be "non-tax supported." Where a city charter declares that municipally owned public utilities are to be "non-tax supported," that prohibition extends to advancements from a tax-generated fund to such public utilities where there is no expectation of prompt and complete repayment.

Accordingly, pursuant to the foregoing, we find that money advanced by the city to Muni Light without provision for prompt and full repayment is an act in violation of the city charter. Therefore, the advanced sums remaining unpaid must be promptly and fully reimbursed by Muni Light to the general fund of the city in accordance with a repayment plan to be approved by the trial court. The judgment of the court of appeals is hereby reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

MOYER, C.J., SWEENEY and WRIGHT, JJ., concur.

---

[3] 1951 Ohio Atty. Gen. Ops. No. 859; 1951 Ohio Atty. Gen. Ops. No. 933; 1954 Ohio Atty. Gen. Ops. No. 4342; 1964 Ohio Atty. Gen. Ops. No. 960; 1964 Ohio Atty. Gen. Ops. No. 1209.

LOCHER, HOLMES and H. BROWN, JJ., dissent.

H. BROWN, J., dissenting. The majority, in its syllabus law, states that in construing the language of a city charter, it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used. Having stated the principle, the majority proceeds to a decision which requires the insertion of language into the Cleveland Charter. Thus, I must dissent.

Neither the Ohio Constitution nor state law prohibits the use of tax revenue by a municipality to support a municipal electric utility. The duly elected Council of the city of Cleveland has enacted an ordinance which relieved its municipal light company ("Muni Light") of any obligation to repay the sum of $29,450,273 previously expended by the city in Muni Light's behalf. Understandably, Cleveland Electric Illuminating Company ("CEI"), a privately owned utility and a competitor of Muni Light, objected. CEI made its objection in the form of a taxpayer's suit seeking to thwart the will of the council. The question before us is whether the Charter of the city of Cleveland conflicts with and precludes the ordinance which was passed by city council.

A city charter operates to limit the legislative power of a municipality *only* when it contains a clear prohibition against the proposed legislation. See *Bd. of Elections* v. *State, ex rel. Schneider* (1934), 128 Ohio St. 273, 191 N.E. 115; *Ostrander* v. *Preece* (1935), 129 Ohio St. 625, 3 O.O. 24, 196 N.E. 670, appeal dismissed (1935), 296 U.S. 543; *Reed* v. *Youngstown* (1962), 173 Ohio St. 265, 19 O.O. 2d 119, 181 N.E. 2d 700; *Cleveland, ex rel. Neelon,* v. *Locher* (1971), 25 Ohio St. 2d 49, 54 O.O. 2d 189, 266 N.E. 2d 831; *Fond-essy Enterprises, Inc.* v. *Oregon* (1986), 23 Ohio St. 3d 213, 23 OBR 372, 492 N.E. 2d 797; *Bd. of Commrs.* v. *Church* (1900), 62 Ohio St. 318, 57 N.E. 50; *Gallagher* v. *Cleveland* (1983), 10 Ohio App. 3d 77, 10 OBR 98, 460 N.E. 2d 733.

Thus, the resolution of this case turns upon an examination of the pertinent provisions of the charter and of the challenged ordinance.

To reach the result it desires, the majority grasps at language contained in Sections 111 and 41 of the Cleveland Charter.

Section 41 provides:

"Upon the written recommendation of the mayor, the council may at any time transfer an unencumbered balance of an appropriation made for the use of one department, division or purpose to any other department, division or purpose, *but no such transfer of revenues or earnings of any non-tax supported public utility to any other purpose shall be made * * *."* (Emphasis added.)

There is no issue in this case of a transfer of revenues or earnings by a non-tax supported public utility to any other purpose. Thus that provision, on its face, has no application to the case before us.

Section 111 provides:

"*The Director of Public Utilities shall manage and supervise all non-tax supported public utility* undertakings of the City, including all Municipal water, lighting, heating, power and transmission enterprises, but excluding mass transportation enterprises, and such other utilities now owned or hereafter acquired by the City of Cleveland as may be placed under any management and supervision other than that of the Director of Public Utilities." (Emphasis added.)

Section 111 defines the duties and authority of the city's public utilities

director. The use of the words "non-tax supported public utility," in the context of defining the director's authority, is not a prohibition on transfer of funds to a municipal utility. Section 111, as the court of appeals notes, makes no reference to the transfer of tax funds and contains no prohibition of such transfers. We should affirm the refusal by the courts below to incorporate a prohibition into the language of an ordinance where such prohibition does not exist.

The use of the words "non-tax supported" in Section 111 does suggest that somewhere in the charter there might be a prohibition on transfer of funds to a municipal utility. But, there is no such prohibition. Little can be added to the analysis by the court of appeals which stated:

"This section [41] first permits transfers of tax funds among the various departments and for varying purposes. The drafters then expressly prohibited * * * the transfer of revenues or earnings of non-tax supported public utilities to any other purpose except those mentioned, which are not in issue. This is the only restriction set forth in this section. No such limitation exists on transfers *to* 'non-tax supported' utilities and we will not imply one." (Emphasis *sic.*)

To read a prohibition into a charter or statute when a prohibition is not contained in the words used therein is in contravention of well-established rules of statutory construction. *Bernardini* v. *Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 4, 12 O.O. 3d 1, 2-3, 387 N.E. 2d 1222, 1224; *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70, 2 OBR 625, 626, 442 N.E. 2d 1295, 1296; *Ohio Assn. of Pub. School Emp.* v. *Twin Valley Local School Dist. Bd. of Edn.* (1983), 6 Ohio St. 3d 178, 181, 6 OBR 235, 238, 451 N.E. 2d 1211, 1214; *Cleveland* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 18, 20, 10 OBR 171, 173, 460 N.E. 2d 1113, 1115; *Bockover* v. *Ludlow Corp.* (1986), 23 Ohio St. 3d 190, 194, 23 OBR 352, 356, 492 N.E. 2d 149, 152-153.

I would affirm the decision reached by the trial court which was unanimously affirmed by the court of appeals.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.