OPINION
These timely appeals arise out of the trial court's adopting a decision of the magistrate granting a writ of mandamus to the appellees ordering the City of Youngstown to appoint from the eligibility list which was to have expired on August 21, 1997, "a sufficient number of persons, in addition to those holding such positions immediately prior to August 21, 1997, a total ten positions of captain, nine positions of lieutenant, and fifty-three positions of detective-sergeant in the Youngstown Police Department."
The facts indicate that relators-appellees Kane and Hughes are lieutenants in the Youngstown Police Department (YPD). Per the civil service eligibility list in effect on August 15, 1997 when these actions were filed, Kane was first and Hughes was second in line for promotion to captain.
Plaintiff-appellee-intervenor Schilling is the next individual eligible for captain per the Civil Service eligibility list in effect on August 15, 1997. Plaintiffs-appellees-intervenors Rafferty, Palmer and Centric are those individuals from the list of August 15, 1997 to be promoted to lieutenant. Plaintiffs-appellees-intervenors Sweeney, Conroy, and Kawa are those individuals from the list in effect on August 15, 1997 next to be promoted to detective-sergeant.
Plaintiffs-intervenors-appellees Scott, Miranda and Pasquale are patrol officers who, according to the Civil Service list in effect August 15, 1997, are also in line for promotion to detective-sergeant.
Defendants-intervenors-appellants Livingston, White, Edwards, Foley, Havrilla, Fergus, Coutric, Kelly and Kelty are YPD officers who would be next in line for promotion if the civil service eligibility list in effect when these actions were filed were to expire August 21, 1997 and the new civil service list would become the controlling promotional list.
 PROCEDURAL HISTORY
On August 15, 1997 relators Lieutenant Martin Kane and Lieutenant Jimmy Hughes filed a complaint for mandamus against Youngstown City Council, The Youngstown Civil Service Commission and Mayor Patrick Ungaro. (Mahoning County Court of Common Pleas Case No. 97 CV 2508). The complaint was based upon the fact that there were only five captains currently employed with the YPD and appellants alleged Youngstown City Ordinance 91-157 authorized ten captain positions. Consequently, on August 15, 1997, an alternative writ of mandamus was granted ordering Kane and Hughes be promoted to captain. Relators were the next two available for promotion to captain pursuant to the certified Civil Service eligibility list then in effect. The eligibility list was to expire August 21, 1997. Consequently, a temporary restraining order was also issued insuring the eligibility list then in effect would be utilized for filling positions vacant prior to August 21, 1997.
On August 20, 1997 the Youngstown Police Association and the other numerous YPD officers moved to intervene in the pending suit. Additional YPD officers filed motions to intervene on September 2, 1997 and appellees Scott, Miranda and Pasquale filed a motion to intervene on September 8, 1997 claiming entitlement to promotion pursuant to Youngstown City Ordinance 91-157. The court issued an alternative writ of mandamus on September 8, 1997 ordering the five detective-sergeant positions with the YPD be filled. On September 12, 1997 the trial court consolidated the cases and continued the TRO until the case could be heard by the trial court.
On September 15, 1997, the named appellant-respondents filed a response to the initial alternative writ contending there were no vacant positions. The respondents relied upon Youngstown City Ordinance 83-245 as support for their position that there were only five captain positions with the YPD. Respondents further argued that the master salary schedule included in Youngstown City Ordinance 91-157 was invalid.
In an amended complaint filed October 27, 1997, relators Hughes and Kane asserted additional justification supporting promotion and reasserted their position that Youngstown City Ordinance 91-157 was a valid city ordinance requiring the promotion of Kane and Hughes.
Various motion to dismiss were filed by intervenor-defendants and by the named defendants. Rulings on these were held in abeyance and ultimately denied after the trial.
The case was tried before the trial court magistrate beginning on October 22, 1997. After the filing of post-trial briefs, the magistrate issued a 14-page decision on January 8, 1998. The magistrate's detailed entry granted a peremptory writ of mandamus ordering promotions pursuant to Ordinance 91-157. Objections were filed by respondents on January 22 and January 28, 1998. A partial transcript of proceedings before the magistrate was filed. The trial court held a hearing on the objections and on March 3, 1998 the trial court entered final judgment. The court's judgment essentially adopted the conclusion of the magistrate's decision which ordered a peremptory writ of mandamus. In addition, the trial court ruled the magistrate's decision satisfied the Ohio Rules of Civil Procedure as to findings of fact and conclusions of law. It is from this order appellants brought the instant appeal.
 APPELLANTS' ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. 1:
 "THE COURT'S DECISION IMPROPERLY RELIES ON ORDINANCE 91-157 IN SETTING THE STAFFING LEVELS OF THE YOUNGSTOWN POLICE DEPARTMENT."
ASSIGNMENT OF ERROR NO. 2:
 "THE COURT ERRED IN RULING THAT THE MAGISTRATE'S DECISION COMPLIED WITH THE OHIO CIVIL RULES RELATING TO FINDINGS OF FACT AND CONCLUSIONS OF LAW."
 DEFENDANT-INTERVENOR-APPELLANTS' ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. 1:
 "THE MAGISTRATE AND THE COMMON PLEAS JUDGES ERRED IN GRANTING RESTRAINING ORDERS RESTRAINING OPERATION OF AN OHIO STATUTE."
ASSIGNMENT OF ERROR NO. 2:
 "THE MAGISTRATE ERRONEOUSLY RELIED UPON ORDINANCE 91-157 AND AN ATTACHD MASTER SALARY SCHEDULE FOR SETTING THE STAFFING LEVELS OF THE YOUNGSTOWN POLICE DEPARTMENT."
Plaintiff-appellees have asserted that because appellants have not complied with App.R. 9, as no trial transcript has been filed, that this court must affirm the trial court's decision. On December 22, 1998, appellant, with leave of court, filed a complete transcript of the proceedings before the magistrate with this court. Since this court now has a complete transcript, this allegation is without merit.
Appellees call to this court's attention that a complete transcript was not submitted by the appellants to the trial court with the objections to the magistrate's decision. In a mandamus action tried before a magistrate, the Ohio Supreme Court established the standard of review when a transcript is not filed with objections to the magistrate's decision. In State ex rel.Duncan v. Chippewa Township Trustees (1995), 73 Ohio St.3d 728, that court stated:
 "When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record. (Citations omitted). In other words, an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to the factual findings constituted an abuse of discretion. (Citations omitted)."
 Id. at 730. In assessing whether or not the trial court abused its discretion, the court in Duncan held a reviewing court cannot consider the transcript since the transcript was not provided to the trial court. "A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." Id. at 730, quoting State v. Ishmail (1978), 54 Ohio St.2d 402.
A review of the records in this case show that only a portion of the magistrate's hearing transcript (pages 253-303) was submitted to the trial court by the appellant with the objections to the magistrate's decision. Hence, any assignments of error before this court relating to evidence which was not before the trial court will be reviewed on an "abuse of discretion" standard.
The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State ex rel Bitter v.Missig (1995), 72 Ohio St.3d 249.
Appellants' assignment of error one and intervenor-appellants' assignment of error two both allege that the trial court and the magistrate's decision improperly relied on Ordinance 91-157 and the attached master salary schedule in setting the staffing levels of the Youngstown Police Department.
In these assignments of error, both appellants cite testimony from the transcript which was not before the trial court in the objections to the magistrate's decision. The defendant-appellant cites to testimony on pages 343, 353-354. The defendant-intervenor-appellant cites to testimony on page 501 of the transcript. To the extent that either of appellants' arguments rely on evidence from parts of the hearing transcript, which was not filed before the trial court, this court must apply an abuse of discretion standard to a review of the trial court's decision adopting the decision of the magistrate.
Appellant alleges that the primary and paramount rule in statutory construction is to ascertain, declare and give effect to the intention of the legislature. Appellant goes on to state that a court must determine the intent of the legislature from the language of the statute and the surrounding circumstances, including the legislative history. Appellant feels that based upon the above that clearly Youngstown City Council had no intention of creating YPD positions with the passage of Ordinance 91-157.
Appellant-intervenor alleges that the magistrate's reliance on the master salary schedule was in error since this document was out-of-date and invalid.
Rules governing the construction of municipal ordinance are the same as those governing the construction of statutes. The cardinal rule is to ascertain, declare and give effect to the legislative intent where possible, and to give effect to the whole enactment. 21 Ohio Jurisprudence 3d, Counties, etc., 243, Section 730.
A review of the City of Youngstown's (City) procedure in enacting its salary and staffing levels by ordinance is essential to the issues before this court. The City produces a document called a master salary exhibit listing all positions in all departments of the City and specifying the number of persons in each position along with the corresponding salary.
The City has adopted the habit of photocopying pages from the master salary schedule and using the copied pages as the integral and substantive part of an ordinance, even to the point of using original page numbers in the salary exhibit. A reader must examine two or more pages to find out how many captains, lieutenants, etc. are called for because one page may list one lieutenant's position and another page may list ten. In the case in question, Ordinance 91-157, council taped at the bottom of the copied pages the words "Be the same is hereby amended to read as follows:", and then duplicated the same pages with typed asterisks identifying the amendment to the number of positions listed on a particular page.
By Ordinance 81-595 (Exhibit B), passed in 1981, city council reduced the number of captains in the YPD from eight to five, to be accomplished by attrition.
By Ordinance 82-429 (Exhibit C), passed in 1982, city council, on the printout page numbered 14 and made a part of the Ordinance, lists three entries for the position of captain. One entry shows eight positions, and the other two show one each, for a total of ten positions. This ordinance basically adopted the master salary schedule as the ordinance and emphasized that the master salary ordinance would control staffing levels for the City. In this ordinance it stated:
"Section 2
 "That all existing salary ordinances with all amendments thereto, and any ordinance or ordinances inconsistent therewith, be and the same are hereby repealed."
By Ordinance 83-245 (Exhibit D), passed in 1983, city council amended page 14 of Ordinance 82-429 to "Reduce The Number of Positions of Captain * * * From Eight (8) to Five (5), By Attrition * * *." City council ignored the fact that Ordinance 82-429 listed the number of captains as eight plus one. Notwithstanding the discrepancy, the action taken in the ordinance fixed the number of captains at five.
By Ordinance 91-157 passed in December 1991 (Exhibit E) city council stated it was amending Ordinance 89-37 which "incorporated by reference a 1989-91 CBA, "as follows:". There followed three copies of pages of a Salary Exhibit numbered from 12 to 14 which listed two captain positions on page 12, and eight captain positions on the next page. At the bottom of page 14, city council stated that all the preceding pages were amended "to read as follows:". There followed three more pages from a Salary Exhibit which listed two captain positions on page 14, and eight captain positions on page 13, for a total of ten. On the first page of Ordinance 91-157, the preamble to the ordinance contained a statement that the intent of the ordinance was to abolish one captain's position. The parties stipulated and agreed that that statement was and is invalid, and of no consequence or effect. The net result from the master salary schedule is that council fixed the number of captains at ten in 1991 even though in 1983 it had fixed the number at five.
With respect to the positions of lieutenant and detective sergeant (a position combined from detective and sergeant) a similar history of amending prior ordinances prevailed. A review of Ordinance 91-157 and of the master salary exhibit (which in fact is the staffing schedule ordinance) shows nine lieutenants and fifty-three detective-sergeants.
The City basically argues that city council's intention in Ordinance 91-157 was to reduce the number of captains to four, the number of lieutenants to eight, and to reduce the detective-sergeant to fifty-four, while acknowledging the attempt to reduce one captain's position as invalid. Appellants also argue that the Master Salary Exhibit is an outdated and unreliable document.
As noted by appellees this court has held that in cases involving statutory construction, legislative intent is the paramount concern. Boardman Township Trustees v. Fleming (1996),110 Ohio App.3d 539.
 "In interpreting a statute, the words must be taken in their usual, normal, or customary meaning. Independent Ins. Agents of Ohio, Inc. v. Fabe (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814. Courts do not have authority to ignore the plain and unambiguous language of the statute under the guise of statutory interpretation, but must give effect to the words used. In other words, courts may not delete words used or insert words not used. Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77. We may not `restrict, constrict, qualify, narrow, enlarge, or abridge' the clear meaning of a statute to suit the particular facts of the case at bar. Wachendorf v. Shaver (1948), 149 Ohio St. 231, 78 N.E.2d 370. It is our duty to give effect to all of the words used in a statute. Cleveland Elec. Illum. Co. v. Cleveland (1988), 37 Ohio St.3d 50, 524 N.E.2d 441." Id. at 542
Legislative intent will only be analyzed if there is an ambiguity in the language of the ordinance or the statute itself.Cline v. Bureau of Motor Vehicle (1991), 61 Ohio St.3d 93.
Youngstown City Ordinance 91-157 is not ambiguous, inconsistent, or unclear. The body of this legislation involves six pages, all of which are the Master Salary Ordinance. City council's intent, from a reading of the words used in the body of Ordinance 91-157, was to abolish the positions identified in the first three pages and to create the positions which followed on the last three pages. The Ordinance is plain and unambiguous as to which positions shall be abolished and which shall be amended and/or added.
No testimony was provided by any councilman as to what was intended in Ordinance 91-157. Appellants did present testimony by the Civil Service Administrator concerning his opinion that the master service attachment was a worthless, unreliable document. (Tr. 253-303). As noted by appellees this administrator acknowledged that the Master Salary Exhibit contained a summary of all departments and all positions. (Tr. 290). He also testified that city council established the number of jobs and the salary:
 "Q And — and you did testify, did you not, that it is council, by ordinance, that establishes the jobs, the numbers and the salary?
"A That's correct." (Tr. 290)
The administrator also testified that he does not attend council meetings (Tr. 290) and that he does not monitor or track legislation to determine how many officers, captains, lieutenants, etc. are authorized by city council. (Tr. 259).
Ordinance 82-429 (Exhibit C) mandates that the Master Salary Schedule should prevail over all other prior ordinances. Ordinance 91-157 Master Salary Exhibit authorized ten captains, eleven lieutenants and fifty-three detective-sergeants with the YPD, and eliminated two positions of lieutenant and five positions of detective-sergeant.
The magistrate clearly was correctly interpreting the plain language of Ordinance 91-157 contained in the master salary schedule in his decision and the trial court's adopting of the magistrate's decision was consistent with the law.
Appellants' assignment of error one and intervenor-appellant's assignment of error two are without merit.
In assignment of error number two, appellants allege the trial court erred in ruling that the magistrate's decision complied with the Ohio Civil Rules relating to findings of fact and conclusions of law.
Appellant states that, "the Magistrate's decision made no express determination as to any findings of fact or conclusions of law." Appellant goes on to allege they were prejudiced in not being aware of what facts and law the magistrate relied on in reaching a conclusion.
Civ.R. 53(E)(2) requires a magistrate to include findings of fact and conclusions of law where requested after a magistrate's decision. In this case the magistrate's decision covered fourteen pages and clearly included findings of fact and conclusions of law.
In the magistrate's decision on pages 1 through 3 the magistrate itemized the parties involved and summarized the dispute in question. On pages 3, 4, and 5 a review of the city's Ordinance history relating to the issue before the magistrate was compiled, and analyzed. This certainly constituted a finding of fact in this case. From pages 6 through 10 the magistrate analyzed the law as it relates to legislative intent and applied that law to the facts of the case in chief. On pages 12, 13, and 14, the magistrate further applied the law to the facts in this case and explained his decision rationale.
There is no requirement that a magical heading of "findings of fact and conclusions of law" are required in a magistrate's decision to fulfill the requirements of Civ.R. 53. In this case clearly the appellants were made aware of the facts relied upon by the magistrate and how he applied those facts to the law concerning issues before the court.
Appellants' assignment of error two is without merit.
In appellant-intervenors' assignment of error number one, appellant alleges that the magistrate and the common pleas judge erred in granting restraining orders restraining operation of an Ohio statute.
The appellant-intervenors assert that the trial court could not by injunction restrain the expiration of the civil service eligibility list, which was to expire on August 21, 1997. The trial court had by injunction restrained the expiration of the Civil Service eligibility list until the determination of the litigation of the mandamus action before the court was completed.
Appellant cites R.C. 124.26 where that statute states, "The term of eligibility for each list shall be fixed by the director at not less than one nor more than two years," and alleges that Ohio law does not permit restraint of the operation of a statute.
Appellant is in error. The trial court is not restraining the operation of a statute but is in fact enforcing the intent of the Civil Service statutes. In the prior assignment of error it has been shown that the magistrate correctly decided that Youngstown City Ordinance 91-157 (by and through the attached Master Salary Schedule) authorized ten positions of captain, nine positions of lieutenant and fifty-three positions of detective-sergeant at the time of the filing of the complaint for mandamus and preliminary injunction. Since vacancies existed on August 15, 1997, those vacancies must be filled pursuant to the Civil Service eligibility list in effect at the time of the vacancies. SeeMcCarter v. Cincinnati (1981), 3 Ohio App.3d 244.
In McCarter, supra, the plaintiff, in facts similar to those before this court, filed his complaint for declaratory judgment and a request for a temporary restraining order one day prior to the expiration of the Civil Service eligibility list. That court upheld the trial court's decision ordering the promotion of the plaintiff per the prior eligibility list in effect at the time of the vacancies.
In the case of Bardo v. Lyndhurst (1988), 37 Ohio St.3d 106, cited by appellee, the Supreme Court reversed the appellate court and granted the mandamus of the relator and ordered the promotion almost three years after the eligibility list had expired, but where the vacancy occurred before the Civil Service eligibility list expired.
Clearly the trial court was correct in enjoining the expiration of the eligibility list in question until the matter before the court was resolved. To hold that vacancies which may occur before an eligibility list expired could be filled from a new eligibility list would encourage the kind of "selective" promotions and non-promotions, that the Civil Service statutes were enacted to abolish.
For a writ of mandamus to be granted, the relator must demonstrate: (1) that relator has no plain and adequate remedy in the ordinary course of law; (2) that the respondent is under a clear legal duty to perform some act or acts; and (3) that relator has a clear legal right to the relief prayed for. SeeState ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
In the case at bar the appellees had a right to be promoted to the appropriate available vacancies under Youngstown City Ordinance 91-157 and the City had a duty to promote those officers to those vacancies per the Civil Service list in effect at the time of the vacancies.
The filling of vacancies above the rank of patrolman is governed by R.C. 124.44, which provides in the parts pertinent here:
 "Vacancies in positions above the rank of patrolman in a police department shall be filled by promotion from among persons holding positions in a rank lower than the position to be filled. No position above the rank of patrolman in a police department shall be filled by an person unless he has first passed a competitive promotional examination. Promotion shall be by successive ranks so far as practicable, and no person in a police department shall be promoted in a higher rank who has not served at least twelve months in the next lower rank. * * * If there is a list, the commission shall, where there is a vacancy, immediately certify the name of the person having the highest rating, and the appointing authority shall appoint such person within thirty days from the date of such certification. (Emphasis added.)"
Mandamus is the appropriate remedy at law where those promotions had not been filled.
For all the reasons cited above and finding no merit in any of the appellants' assignments of error, the decision of the trial court adopting the magistrate's decision is affirmed.
Cox, J., concurs
Vukovich, J., dissents; see dissenting opinion
APPROVED:
 ________________________________ JOSEPH O'NEILL, RETIRED JUDGE OF THE SEVENTH APPELLATE DISTRICT, SITTING BY ASSIGNMENT