OPINION
{¶ 1} Defendants-appellants, MetroHealth Medicine Group et al., appeal from the September 25, 2001 decision and the October 22, 2001 entry granting summary judgment in favor of plaintiff-appellee, J. Lee Covington II, Ohio Superintendent of Insurance and Liquidator of Personal Physician Care, Inc. For the reasons that follow, we reverse.
{¶ 2} Appellants are all various trade names of the MetroHealth Medicine Group, healthcare providers who had provider agreements with Personal Physician Care, Inc. ("PPC"), a licensed health insurance corporation. On or about November 25, 1997, PPC was placed under the supervision of the Superintendent of Insurance. In August 1998, appellee's predecessor in office, Harold T. Duryee, determined that PPC was in such financial condition that further transaction of business would be hazardous financially to its policyholders, creditors, or the public. The superintendent brought an action against PPC, and the Franklin County Court of Common Pleas issued an order of rehabilitation on August 12, 1998. Harold T. Duryee v. Personal Physician Care, Inc., case No. 98CVH08-6251. The order, at ¶ 4, directed the rehabilitator to "take and secure possession of all assets and property of Defendant PPC, including, but not limited to, all property, contracts, deposits, securities, rights of action, accounts, safe deposit boxes and books and records of Defendant, wherever located, and administer them under the general supervision of the Court."
{¶ 3} On August 20, 1998, the court entered an order of liquidation and appointment of receiver. Appellee has since succeeded Harold T. Duryee and been automatically substituted as liquidator for PPC pursuant to Civ.R. 25(D).
{¶ 4} Between July 31, 1998 and August 12, 1998, but before the order of rehabilitation was entered, PPC issued numerous checks to appellants in excess of $76,000. The checks were cashed on or after August 12, 1998, after the rehabilitation order was entered, but before appellee closed PPC's bank account.
{¶ 5} On August 17, 2000, appellee, acting in his capacity as liquidator, brought the present action alleging the transfers of funds were voidable transfers under R.C. 3903.27(B), and appellee was entitled to recover the funds that were transferred.
{¶ 6} On June 28, 2001, appellee filed a motion for summary judgment, claiming it was entitled to the proceeds of the checks as a matter of law. Appellants filed their memorandum in opposition on July 30, 2001.
{¶ 7} The trial court issued a decision on September 25, 2001 granting appellee's motion for summary judgment. The trial court reasoned that the Ohio Revised Code did not impose a duty on the liquidator to stop payment on the checks, but, rather, voids post-petition checks. The trial court also examined R.C. 3903.27(C), which provides, "[n]othing in sections 3903.01 to 3903.59 of the Revised Code shall be construed to impair the negotiability of currency or negotiable instruments." The trial court held that application of R.C.3903.27(C) would vitiate the entire purpose of the liquidation statute. The trial court entered final judgment on October 22, 2001.
{¶ 8} On appeal, appellants challenge the decision granting summary judgment, assigning as error the following:
{¶ 9} "ASSIGNMENT OF ERROR NO. 1
{¶ 10} "The decision below incorrectly held that R.C. §3903.27(B) allowed ODI to void the transfers. R.C. § 3903.27(B) allows a transfer to be voided if: (1) the transfer occurs after the filing of a rehabilitation complaint and before the filing of the rehabilitation order; or (2) the transfer occurs prior to the rehabilitator taking possession of the insurer's property. In this case, the transfers occurred after the filing of the rehabilitation order and after the rehabilitator took possession of the property. Since the transfers did not occur within either of the time periods covered by R.C. § 3903.27(B) they could not be voided.
{¶ 11} "ASSIGNMENT OF ERROR NO. 2
{¶ 12} "The trial court erred when it held that R.C. §3903.27(C), which specifically protects the negotiability of negotiable instruments, did not apply to the checks in this case. The trial court incorrectly reasoned that applying R.C. § 3903.27(C) would vitiate the entire purpose of R.C. Chapter 3903. This reasoning is doubly flawed. One, the trial court had a duty to give effect to the plain language of the statute. Two, only a limited number of transfers are actually protected by R.C. § 3903.27(C); thus, enforcing the statute as written will only have a negligible impact on R.C. Chapter 3903. Therefore, the decision below incorrectly held that R.C. § 3903.27(C) did not apply to the transfers." (Emphasis sic.)
{¶ 13} Appellate court review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
{¶ 14} In their first assignment of error, appellants argue that the check transfers are not voidable under R.C. 3903.27(B) because the statute limits voidable transfers to transfers that occur between the filing of the complaint and the order of rehabilitation. Since the transfers in this case occurred after the rehabilitation order was entered, they are not voidable under R.C. 3903.27(B). We disagree.
{¶ 15} R.C. 3903.27(B) provides as follows:
{¶ 16} "After a complaint for rehabilitation or liquidation has been filed and before either the rehabilitator or liquidator takes possession of the property of the insurer or an order of rehabilitation or liquidation is granted:
{¶ 17} "(1) A transfer of any of the property of the insurer, other than real property, made to a person acting in good faith shall be valid against the rehabilitator or liquidator if made for a present fair equivalent value, or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien on the property so transferred.
{¶ 18} "(2) A person indebted to the insurer or holding property of the insurer may, if acting in good faith, pay the indebtedness or deliver the property, or any part thereof, to the insurer or upon his order, with the same effect as if the complaint were not pending.
{¶ 19} "(3) A person having actual knowledge of the pending rehabilitation or liquidation shall be deemed not to act in good faith.
{¶ 20} "(4) A person asserting the validity of a transfer under this section has the burden of proof. Except as elsewhere provided in this section, no transfer by or on behalf of the insurer after the date of the complaint for rehabilitation or liquidation by any person other than the rehabilitator or liquidator is valid against the rehabilitator or liquidator."
{¶ 21} The first part of subsection (B) sets forth transfers that are valid against the rehabilitator or liquidator. Subsection (B)(4) then states that post-complaint transfers by or on behalf of the insurer by anyone other than the liquidator or rehabilitator are invalid against the rehabilitator or liquidator.
{¶ 22} Here, the parties agree that the actual transfers in this case occurred when the checks were cashed after August 12, 1998, the date the complaint was filed and the order of rehabilitation was entered. The parties also agree that, pursuant to R.C. 3903.13(A), title to PPC's bank accounts vested in the rehabilitator when the order of rehabilitation was filed. Appellants claim that since the rehabilitator now had title to PPC's assets, the transfer actually came from the rehabilitator and is therefore valid. Appellee claims appellants cashed the checks and received funds from assets that did not belong to PPC.
{¶ 23} Under Ohio law, checks are negotiable instruments. They are unconditional promises to pay a sum certain in money, payable on demand. See R.C. 1303.03(A). PPC issued the checks, and they were endorsed and negotiated after PPC was placed in rehabilitation. We believe that under the plain language of R.C. 3903.27(B)(4), the transfers were made on behalf of PPC after the date of the complaint for rehabilitation and therefore presumptively invalid against appellants.
{¶ 24} However, we still must determine what effect, if any, R.C.3903.27(C) has on the transfers at issue. In their second assignment of error, appellants argue the trial court erred in failing to give effect to R.C. 3903.27(C) with respect to the checks that were issued in this case.
{¶ 25} R.C. 3903.27(C) states:
{¶ 26} "Nothing in sections 3903.01 to 3903.59 of the Revised Code shall be construed to impair the negotiability of currency or negotiable instruments."
{¶ 27} In our recent opinion in J. Lee Covington, II v. University Hospitals of Cleveland, Franklin App. No. 01AP-1140, 2002-Ohio-4304, this court construed R.C. 3903.27(B) and (C) in a factual scenario nearly identical to the present case. In that case, health care providers received checks from PPC while PPC was under supervision, but before the order of rehabilitation was entered. The providers presented the checks for payment after the rehabilitation order was entered, but before the liquidator closed the bank account. There were no allegations that any of the checks were unauthorized, that the rehabilitator attempted to stop payment on the checks, that there was any fraud, and that the bank that honored the checks or the health care providers had knowledge of the order of rehabilitation at the time the checks were honored. Under those circumstances, this court determined that the health care providers were holders in due course, and to require a payee who is a holder in due course to disgorge the proceeds of checks that were issued before an order of rehabilitation was entered would impair the negotiability of a negotiable instrument. Id. at ¶ 37.
{¶ 28} We disagree with the trial court that giving effect to the language of R.C. 3903.27(C) would vitiate the entire liquidation statute. There are many types of transfers of property that do not involve the impairment of negotiable instruments, and clearly those transfers would be invalid against the rehabilitator or liquidator pursuant to R.C. 3903.27(B)(4). In considering the statutory language, it is the duty of the court to give effect to the words used in a statute, not to delete words used or to insert words not used. Cleveland Elec. Illum. Co. v. Cleveland (1988), 37 Ohio St.3d 50, paragraph three of the syllabus.
{¶ 29} Here, however, it is unclear on the state of this record whether appellants negotiated the checks in good faith or whether they had knowledge of the pending rehabilitation or liquidation when the transfers were made. Appellants indicated by way of affidavit that they did not know of the decision in 1997 to place PPC into supervision by the department of insurance, but it is less clear whether appellants had knowledge of the decision in 1998 to file a complaint for rehabilitation. For example, appellants claimed in their memorandum in opposition to appellee's motion for summary judgment that "[t]he Superintendent took no action to inform MetroHealth or any other PPCI creditor of PPCI's dire financial condition or the Superintendent's plan to sell the company, despite MetroHealth's pleas for help until July 1998." (Affidavit of Brian Quinn at ¶ 16.) Since the checks were negotiated after August 12, 1998, it is not clear what appellants knew or did not know at the time the checks were issued. Thus, we find that the trial court erred in granting summary judgment as a matter of law to appellee as factual issues remain.
{¶ 30} Based on the foregoing, we overrule appellants' first assignment of error, sustain the second assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand the matter for further proceedings in accordance with this opinion.
Judgment affirmed in part, overruled in part and remanded for further proceedings.
DESHLER and KLATT, JJ., concur.