O’Donnell, J.,
dissenting.
{¶ 17} I respectfully dissent.
{¶ 18} In November 2012, voters in the city of Norton amended the city’s charter to require the city to televise all city council meetings. The amendment states:
Section 3.20 Televised Meetings
Effective upon passage by the electors, the Administration and Council shall have up to sixty days to arrange for and commence public airings of all Council meetings, work sessions, and workshops. All aforementioned *127 Council meetings shall be televised “live,” in their entirety, without censorship and/or editing. Such televised broadcasts shall further be offered twice weekly during repeat airings for public accessibility. Additionally, Council shall arrange for copies of the recorded Council meetings to be available at minimum cost to the public upon request or at no cost to citizens supplying their own suitable medium for recording.
(Emphasis added.)
{¶ 19} Since the amendment of the charter, the city has not televised the city council meetings, but rather has streamed live video footage of the meetings over the Internet, accessible through the city’s website, and in this case, William Paluch sought a writ of mandamus to compel the city to televise those meetings. The Ninth District Court of Appeals denied the writ, concluding that the charter “does not specify the means by which televising the meetings must be accomplished” and that Internet streaming is a manner of televising the meetings. 9th Dist. Summit No. 26849 (June 12, 2013), 3-4.
{¶ 20} A writ of mandamus shall lie if a relator is able to establish a clear legal right to the requested relief, a clear legal duty on the part of the respondent to provide it, and the lack of an adequate remedy in the ordinary course of law. State ex rel. Waters v. Spaeth, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.
{¶21} In construing charter provisions, we apply “general laws regarding statutory interpretation, including construing charter language according to its ordinary and common usage.” State ex rel. Commt. for Proposed Ordinance to Repeal Ordinance No. 116-02, W. End Blight Designation, v. Lakewood, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 19. “A court construing a provision in a city charter, statute, contract or other writing may not ignore the existence of any word or phrase.” Cleveland Elec. Illum. Co. v. Cleveland, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988).
{¶ 22} Here, the Norton city charter has used the terms “televised broadcasts” and “airings,” and those terms have established meanings. “Televise” means “to broadcast by television.” Webster’s Third New International Dictionary 2351 (1993); Merriamr-Webster Online, available at http://www.merriam-webster.com/ dictionary/televise (accessed Sept. 23, 2014). “Broadcast” means “the act of sending out sound or images by radio or television transmission.” Webster’s Third New International Dictionary 280; Merriam-Webster Online, available at http://www.merriam-webster.com/dictionary/broadcast (accessed Sept. 23, 2014). And “airing” means “a radio or television broadcast,” Webster’s Third New International Dictionary 46, or “an occurrence in which a radio or television program is broadcast,” Merriam-Webster Online, available at http://www.rn *128 erriam-webster.com/dictionary/airing (accessed Sept. 23, 2014). The common denominator in each of these definitions is television — but the Norton city charter does not specify that live streaming video is a substitute for, or equivalent to, the mandate to televise the council proceedings.
William Paluch, pro se.
Roetzel & Andress, L.P.A., Stephen W. Funk, and Justin Markey, for appellee.
{¶ 23} Even if the majority is correct that viewing an Internet stream on a computer is tantamount to watching television, Internet streaming is not a televised broadcast; rather, streaming is more accurately understood to be a unicast of media, in that there is one stream of data directed from a central server to the user’s specific computer over an individual IP address. See Walker, A La Carte Television: A Solution to Online Piracy?, 20 CommLaw Conspectus 471, 479 (2012). As one commentator has noted, “Unlike television and technology from its era, the Internet functioned as an individualized, unicast medium from the beginning. The Internet eschews the very concept of ‘broadcasting’ in favor of individual control — users requests information they want on their terms and that information is delivered.” Bassett, The Inevitable Television Revolution: The Technology Is Ready, the Business Is Lagging, and the Law Can Help, 29 Syracuse J.Sci. & Teeh.L.Rep. 1, 25 (2013), fn. 104.
{¶ 24} This is not a case in which we are asked to construe older charter language adopted before the advent of newer technology; the electors of Norton were aware of the existence of Internet streaming in 2012 but nonetheless amended the charter to require the city to televise its city council proceedings, directing the city to use a specific manner of transmitting the audio and video of those proceedings in “public airings” through “televised broadcasts,” and these are terms that are commonly understood to require the use of a television set. A televised broadcast may be streamed over the Internet, but a program transmitted solely by way of an Internet stream is not a televised broadcast.
{¶ 25} Paluch has established a clear legal right to the relief requested and demonstrated no adequate remedy at law, and Section 3.20 of the charter of the city of Norton imposes a clear legal duty on the city to televise its council proceedings. Because the city has not done so, I would reverse the judgment of the court of appeals and grant the writ of mandamus.
Kennedy and French, JJ., concur.