GALLAGHER ET AL., APPELLANTS, *v.* CITY OF CLEVELAND ET AL., APPELLEES.

(No. 45018—Decided July 5, 1983.)

*Mr. Paul S. Lefkowitz,* for appellants.
*Mr. D. John Travis* and *Mr. Nick Tomino,* assistant directors of law, for appellees.

PARRINO, P.J. Plaintiffs-appellants,

[1] One of the plaintiffs is the president of the Fraternal Order of Police, Cleveland Lodge No. 8. Five of the plaintiffs hold the rank of deputy inspector and five hold the rank of captain in the Cleveland Police Department.

[2] Section 90 of the charter provides as follows:
"Taxpayer's Suit.
"In case the Director of Law, upon written request of any taxpayer of the City, fails to make any application provided for *in the preceding three sections,* such taxpayer may institute suit or proceedings for such purpose in

eleven police officers[1] of the Cleveland Police Department and taxpayers of the city of Cleveland, initiated this action in the court of common pleas against several parties-defendants, including the city of Cleveland, the mayor, members of the Cleveland Civil Service Commission, and two officers, Harold Laubenthal and Richard Kazmir, both of whom hold the position of deputy chief of police in the Cleveland Police Department. Plaintiffs sought a declaration that Section 135.042 of the Codified Ordinances of the city of Cleveland (C.O. 135.042) was null and void as being in violation of several provisions of the Cleveland City Charter.

Defendants Kazmir and Laubenthal, both of whom held the rank of captain in the Cleveland Police Department prior to January 3, 1981, were each assigned on that date to the position of deputy chief of police. The position of deputy chief was established by C.O. 135.042, which became effective December 17, 1980.

Where an ordinance is in conflict with a charter provision, the charter prevails. See *Reed* v. *Youngstown* (1962), 173 Ohio St. 265 [19 O.O.2d 119]. Plaintiffs contend that C.O. 135.042 conflicts with several provisions of the Cleveland City Charter, specifically Sections 126, 131, and 133.

Plaintiffs alleged in their complaint, and defendants admitted in their answer, that plaintiffs, pursuant to Section 90[2] of

his own name on behalf of the City. No such suit or proceeding shall be entertained by any court until such request to the Director of Law shall first have been made, nor until the taxpayer shall have given security for the costs of the proceedings." (Emphasis added.)
One of the three preceding sections referred to above is Section 87, which provides:
"Application for Injunction.
"The Director of Law shall apply, in the name of the City, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the City, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the City in contravention of law, or which was procured by fraud or corruption."

the city charter, served a demand upon the Director of Law of the city of Cleveland to apply in the name of the city to a court of competent jurisdiction for an order enjoining the application and enforcement of, and compliance with, C.O. 135.042, and that the director of law refused to comply with this demand.

Plaintiffs moved for summary judgment on September 30, 1981. Defendants filed a cross-motion for summary judgment.

In their motion for summary judgment, plaintiffs contended that Kazmir and Laubenthal had been "promoted" to the position of deputy chief within the meaning of Section 133 of the city charter and that the appointment procedure followed did not meet the requirements set forth under Section 126 and Section 131 of the charter in that no civil service examination had been given and appointment had not been made from a list of eligibles certified by the Cleveland Civil Service Commission.

As police officers holding positions in the ranks of captain or above, plaintiffs apparently wish to compete for promotion to the position of deputy chief. As taxpayers, plaintiffs are challenging the misapplication of city funds to pay salaries of employees who allegedly were appointed to their positions in violation of Section 126 and Section 131 of the city charter.

There being no factual issues in dispute, the trial court granted defendants' motion for summary judgment and overruled plaintiffs' motion for summary judgment.

Plaintiffs' two assignments of error contest the granting of defendants' motion for summary judgment and the overruling of plaintiffs' motion for summary judgment, respectively.

Two distinct issues raised in the court below must be resolved.

The first issue is whether Cleveland City Council was acting within its authority to create either a valid classified or unclassified position when it created the position of deputy chief.

The second issue is whether Officers Kazmir and Laubenthal were "promoted" to the position of deputy chief within the meaning of Section 133 of the Cleveland City Charter such that two vacancies were created in the rank of captain when they became deputy chiefs.

Section 126 of the Cleveland City Charter provides that "[t]he civil service of the City is hereby divided into the unclassified and classified service." Therefore, a given position in the civil service must be either a classified or an unclassified position.

With respect to the positions in the classified service, subsection 2 of Section 126 provides in part that:

"The classified service shall comprise all positions not specifically included by this Charter in the unclassified service. There shall be in the classified service three classes to be known as the competitive class, the noncompetitive class and the ordinary unskilled labor class."

Furthermore, subsection 1 of Section 126 of the charter sets forth the unclassified positions in the civil service as follows:

"The unclassified service shall include:

"(a) All officers elected by the people.

"(b) All directors of departments.

"(c) The Clerk of Council.

"(d) The Chief of Police.

"(e) The members of all boards or commissions appointed by the Mayor and of advisory boards appointed by the director of a department.

"(f) The secretary to the Mayor and one secretary for each director of a department.

"(g) Eight (8) executive assistants to the Mayor, provided, however, that there shall be no restrictions as to their duties [or] assignments.

"(h) Students enrolled in a recognized college or university in a course of

training in preparation for an administrative or professional career in the public service and employed upon the recommendation of the official in charge of personnel administration as student aides for training purposes without limitation as to assignment or duties.

"(i) School crossing guards."

The position of deputy chief is not specifically included within subsection 1. Nor does any other charter provision of which we are aware specifically designate deputy chief of police to be an unclassified position.

Therefore, the Cleveland City Council could not, consistent with Section 126 of the charter, create the position of deputy chief as an unclassified position.[3]

If the position is a classified position, then, in accordance with subsection 2 of Section 126, it would have to be characterized as being either in a "competitive class" or a "noncompetitive class" since it clearly would not be considered as being in the "ordinary unskilled labor class." As such, the position could only be filled in accordance with subsections 2(a) and 2(b) of Section 126 of the charter, which provide:

"(a) The competitive class shall include all positions and employment for which it is practicable to determine the merit and fitness of applicants by competitive tests.

"(b) The noncompetitive class shall include all positions requiring peculiar and exceptional qualifications of a scientific, managerial, professional or educational character, as may be determined by the Commission, the fitness of applicants for which may be determined by noncompetitive tests."

Moreover, the appointment procedure set forth under Section 131 of the Charter would have to be followed. That section provides in pertinent part:

"Appointments

"When any position in the classified service, except the ordinary unskilled labor class, is to be filled, the appointing authority shall notify the Commission of the fact and the Commission shall certify to such authority the names and addresses of the three candidates standing highest on the eligible list for the class or grade to which such position belongs. The appointing authority shall appoint to such position one of the three persons whose names are so certified * * *."

These charter provisions would require that the position of deputy chief, if a classified position, be filled from a certified list of eligible applicants whose fitness for the position has been appropriately determined by the civil service commission.[4]

To the contrary, C.O. 135.042 provides that the deputy chief shall be assigned to his position by the chief of police:

"The Chief of Police shall assign not more than two members of the Division of Police, selected from the ranks of Captain or higher, to the position of Deputy Chief of Police. The compensation for the position of Deputy Chief of Police shall be at the rate fixed for the rank of Inspector of Police. The status within the uniform ranks of each such member while so serving in such position shall remain unchanged and, notwithstanding the compensation fixed for such position, he shall not acquire any right to promotion other than such rights to promotion which apply to the rank held at the time of assignment. The assignments herein authorized shall be effective for a period not to exceed one (1) year."

---

[3] Defendants did not even contend in the trial court or on appeal that the position of deputy chief is an unclassified position.

[4] Plaintiffs alleged in their complaint, and defendants admitted in their answer, that Kazmir and Laubenthal did not take an examination for the position of deputy chief and were not appointed from a list of eligibles.

Furthermore, as the language of the ordinance indicates, the appointment is not considered to be a promotion. The person so appointed is to serve for not more than one year and does not lose his former rank in the police department.

Clearly, the intent of the city council in passing this ordinance was not to create a classified position.

Cleveland City Council therefore created a position which falls neither within the classified nor the unclassified service, which are the only positions permitted by Section 126 of the charter.

The creation of the position of deputy chief by C.O. 135.042 therefore violates Sections 126 and 131 of the charter and may not be given effect.

The first issue having been resolved, we turn now to the question of whether Kazmir and Laubenthal were "promoted" to the position of deputy chief within the meaning of Section 133 of the charter, which provides:

"Promotions Wherever Practicable.

"Wherever practicable, vacancies shall be filled by promotion. Any advancement in rank or increase in salary beyond the limits fixed for the grade shall constitute a promotion. Lists shall be created and promotions made therefrom of candidates in the same manner as in original appointments; provided, however, that less than three shall constitute an eligible list, and the appointing authority shall appoint from the eligible list."

Relying upon the reasoning of the Ohio Supreme Court in the cases of *State, ex rel. Casey,* v. *Cull* (1949), 151 Ohio St. 331 [39 O.O. 162], and *State, ex rel. Hanton,* v. *Cleveland* (1966), 6 Ohio St. 2d 258 [35 O.O.2d 421], we conclude that defendants were not so promoted.

In *State, ex rel. Casey,* v. *Cull, supra,* the relator was a sergeant in the Cleveland Police Department who, because he had been detailed to the detective bureau, received a salary, fixed by municipal ordinance, which was higher than that given to other officers holding the rank of sergeant.

In its analysis of whether relator had been promoted, the Supreme Court looked to G.C. 486-15a, which provided that "[f]or the purpose of this section, an increase in the salary or other compensation of anyone holding a position in a police or fire department, beyond that fixed for the grade or rank in which such position is classified, shall be deemed a promotion." It is apparent that the language of this statute parallels that of Section 133 set forth above.

The court in *Cull* decided that although the relator had received an increase in salary, he had not been promoted within the meaning of G.C. 486-15a because (1) no intention or plan to create any additional grade or rank was exhibited in the passage of the ordinance and (2) relator did not pass a promotional examination, which would be a prerequisite to advancement to any position above the rank or grade of patrolman.[5]

In like manner, the Supreme Court in *State, ex rel. Hanton,* v. *Cleveland, supra,* determined that the appointment of a police officer to the position of commissioner of traffic control at a higher salary was not a promotion within the meaning of Section 133 of the charter because the officer had not been chosen from an eligible list created by competitive examination. A raise in salary is not enough to establish a promotion, the court concluded.

---

[5] While the court concluded that there was no intention on the part of city council to create a classified rank, it did not consider whether the position of sergeant detailed to the detective bureau could be validly created as a classified rank or as an unclassified position.

The relator in *Cull* was not challenging the unauthorized disbursement of public funds as a taxpayer so the legality of the payment of relator's salary was never touched upon by the court.

Our analysis of the case *sub judice* is consistent with the two above-cited cases. We agree that, although they received salary increases,[6] Kazmir and Laubenthal did not receive promotions within the meaning of Section 133 since city council did not intend to create classified positions. As stated above, this is indicated by, *inter alia,* the fact that there was no apparent intention that the positions be filled in accordance with procedures mandated by charter for the filling of classified positions.

Accordingly, plaintiffs' contentions that Kazmir and Laubenthal were promoted to the position of deputy chief and that vacancies were thereby created in the rank of captain are without merit. On the other hand, plaintiffs' contention that the position of deputy chief was created in conflict with relevant provisions of the charter is well-taken.

It is obvious that if Cleveland City Council can create the position of deputy chief as set forth in C.O. 135.042, it could analogously create the position of deputy patrolman, deputy sergeant, deputy lieutenant, etc., all of which positions could be filled other than through the appointment procedures set forth under Sections 126 and 131 of the charter.[7]

Logically, this could result in the creation of two police departments, one consisting of the arrangement of police officers in ranks held by the officers prior to the passage of the position-creating ordinances and one consisting of the phantom "ranks" to which these officers had been assigned pursuant to the ordinances.

The appointment procedure as set forth in Section 126 and Section 131 could thereby be completely circumvented. Clearly, this was not the intent of those charter provisions.

We therefore hold that Kazmir and Laubenthal were not promoted to the position of deputy chief. We further hold that C.O. 135.042 is invalid and cannot be given effect because it creates a position which does not meet the requirements set forth in the Cleveland City Charter for a classified or unclassified civil service position.[8]

For these reasons we reverse the trial

---

[6] The annual salary of a captain in the Cleveland Police Department is $28,920.48. The annual salary of a deputy chief is $37,636.65.

[7] Appellate counsel for defendants admitted in response to a question put to him by the court at oral argument that such "ranks" could be so created although the city had no intention of creating them.

[8] We note that the Supreme Court's decision in *State, ex rel. Hanton,* v. *Cleveland, supra,* is consistent with and, in fact, presages this opinion. The appellants in *Hanton,* at 259-260, argued that the ordinance creating the position of commissioner of traffic control was invalid because it attempted to add that position to the list of unclassified positions in violation of the Cleveland City Charter. The Supreme Court agreed with appellants' argument. The court then concluded, at 261:

"Since Skerotes' salary as Commissioner of Traffic Control exceeds the limits fixed for the grade which he holds as his permanent civil service rank as lieutenant of police, he could not be promoted to the new rank except from an eligible list. Hence, no vacancy exists and the judgment of the Court of Appeals denying the writ is affirmed."

The court in this paragraph refers to the commissioner of traffic control as a "new rank." The inference is that it is a new rank because relator is receiving a higher salary. The court then concludes that appointment to this position could only be made from an eligible list.

Analogously, the assignment of Kazmir and Laubenthal to the position of deputy chief, because such assignment involves an increase in salary, must be considered a transfer to either a classified or unclassified position. Although city council attempted to create the position as an unclassified position, it cannot be so created because it is not among the unclassified positions listed under Section 126 of the charter. Therefore, if it can be created

court's order granting summary judgment for defendants and denying plaintiffs' motion for summary judgment, and enter judgment for the plaintiffs holding that C.O. 135.042 is invalid and for the defendants holding that Kazmir and Laubenthal were not promoted to the position of deputy chief of police.

*Judgment reversed and cause remanded.*

NAHRA and PRYATEL, JJ., concur.

___

and filled at all, the position of deputy chief must be created as a classified position and filled according to procedures set forth in the charter.