BOYLE, M.J., J.
 {¶ 49} While I agree with the majority opinion regarding Alton's second, third, and fourth assignments of error, I respectfully dissent with respect to Alton's first assignment of error.
 {¶ 50} In his first assignment, Alton argues that the trial court erred when it denied his motion to suppress because the "affiant officer [Escalante] was not a legally and duly sworn police officer" for the city of Westlake.
 {¶ 51} The majority summarizes Alton's argument, and then without any reference to this court's standard of review on a motion to suppress, states: "[t]his *Page 15 
claim ignores the testimony provided to the trial court at the hearing on Alton's motion to suppress evidence." The majority then simply recites the testimony of Westlake's chief of police that Escalante was "a sworn police officer" with "current certifications as an Ohio peace officer." With all due respect, it is this writer's opinion that the majority did not address the issue presented.
 {¶ 52} At the outset, this court must set forth an appellate court's standard of review on a motion to suppress. In State v. Burnside,100 Ohio St.3d 152, at 8, the Supreme Court of Ohio stated:
 {¶ 53} "[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366 * * *. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19 * * *. * * * Accepting these facts as true, the appellate court must then independently determine, [as a matter of a law], without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara
(1997), 124 Ohio App.3d 706 * * *."
 {¶ 54} Alton is not arguing here, nor did he claim so in the lower court, that Escalante is not a "sworn police officer" without "current certifications" in Ohio. *Page 16 
Rather, Alton argues that Escalante is not an officer — at all — for the city of Westlake. Alton contends that Westlake bypassed its own civil service laws when it hired Escalante as a law enforcement official. Therefore, Alton maintains that Escalante is not properly employed as a law enforcement officer by the city, regardless of what his title is. Without lawful employment, Alton maintains that Escalante could not be an affiant on a search warrant and thus, the warrant would be invalid.
 {¶ 55} The state does not contend that Escalante is a "police officer" or other law enforcement officer. Instead, it argues that Escalante was a proper affiant to obtain a search warrant under R.C. 2901.01(A)(11)(b), because Escalante was "employed by the city of Westlake" with "the authority to arrest." For the following reasons, this writer disagrees with the state's argument.
 {¶ 56} The "Affidavit for Search Warrant" begins, "[b]efore me being first duly sworn appears Executive Assistant Charles Escalante of the Westlake Police Department." It then details Escalante's years of experience as a police officer, first for Avon Lake, and then for the city of Cleveland. The affidavit is signed "Charles Escalante."
 {¶ 57} The "Search Warrant" provides: "[t]o Chief of Police of the Westlake Police Department and/or Detective Charles Escalante of the Westlake Police Department, and/or any law enforcement officer as authorized." *Page 17 
 {¶ 58} The "Order Sealing Affidavit" states: "[t]he Court finds that Detective Charles Escalante of the Westlake Police Department, has made an application for a search warrant to be executed by officers of the Westlake Police Department * * *." Charles Escalante also signed the "Search Warrant Inventory List" as the Inventory Officer.
 {¶ 59} Section Fourteen, Article I, of the Ohio Constitution provides that:
 {¶ 60} "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person(s) and things to be seized."
 {¶ 61} Crim. R. 41 and Chapter 2933 of the Ohio Revised Code govern the requirements for search warrants in the state of Ohio. State v.Williams (1991), 57 Ohio St.3d 24, 25.
 {¶ 62} R.C. 2933.22 states: "[a] warrant of search or seizure shall issue only upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the property and things to be seized." R.C. 2933.24 mandates that the warrant be issued to "the proper law enforcement officer * * *."
 {¶ 63} Crim. R. 41(A) provides that "[a] search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located *Page 18 
within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a law enforcement officer."
 {¶ 64} A "law enforcement officer" is defined in R.C. 2901.01(A)(11). It provides in pertinent part that "law enforcement officer" is:
 {¶ 65} "(a) A sheriff, deputy sheriff, constable, police officer of a township or joint township police district, marshal, deputy marshal, municipal police officer, member of a police force employed by a metropolitan housing authority * * *, or state highway patrol trooper;
 {¶ 66} "(b) An officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, a duty to conserve the peace or to enforce all or certain laws is imposed and the authority to arrest violators is conferred, within the limits of that statutory duty and authority * * *."
 {¶ 67} Crim. R. 2(J) also defines "law enforcement officer." It essentially mirrors the relevant portions of R.C. 2901.01(A)(11).
 {¶ 68} Escalante was not an "employee of the state" with statutorily conferred "authority to arrest" as the state argues. No where in the statute is "authority to arrest" conferred upon an executive assistant to the chief of police. If Escalante had authority to arrest, it was because he was employed as a law enforcement officer for the city of Westake. However, whether Escalante was properly employed was not established, despite Alton's counsel attempting to do so. *Page 19 
 {¶ 69} After reciting the testimony of the chief of police, Richard Wallings, the majority states "Alton's argument also ignores the concession made by his attorney at the conclusion of the hearing[,]" that "Escalante `can act as a police officer in the [c]ity of Westlake without taking a civil service exam.'" However, the reason Alton's attorney concluded his line of questioning, which ultimately ended the motion to suppress hearing, is because the trial court interrupted him and would not permit him to continue. It is my view that Alton's attorney did not concede anything to the trial court.
 {¶ 70} On cross-examination, Alton's attorney asked the chief of police, "[s]o if I wanted to be a police officer in the city of Westlake, the job would have to be classified and I would have to take the civil service exam?" Before Wallings could answer, the trial court interrupted Alton's attorney, and stated:
 {¶ 71} "THE COURT: Excuse me. Mr. Peterson, you are the one that's mixing the vernacular. The executive assistant is considered under the law to be a confidential employee exempt from a bargaining unit. Civil service has certain protections similar to what would be existing in a bargaining unit.
 {¶ 72} "The classification of an officer as an executive assistant is a classification done to exempt them specifically from this protection of civil service. It makes it at-will employment. So you are the one that is mixing an apple with an orange." *Page 20 
 {¶ 73} "MR. PETERSON: Your honor, I am not sure I am mixing apples and oranges.
 {¶ 74} "THE COURT: You are.
 {¶ 75} "MR. PETERSON: There is a specific reason.
 {¶ 76} "THE COURT: You can be a sworn police officer and be an executive assistant. What it does is, as I said, is exempt from the rule of civil service for purposes of your employment.
 {¶ 77} "So I don't want you to think that because he is an executive assistant that he can't function as somebody able to be an affiant on a search warrant. The two are not mutually exclusive.
 {¶ 78} "MR. PETERSON: I don't have that information, your Honor. I thought they were mutually exclusive.
 {¶ 79} "THE COURT: You need to research civil service and research at-will employment. The distinction is done to avoid the protection of civil service and makes the person an at-will employee. It removes actually a number of their employment protections."
 {¶ 80} After reviewing the record, it is apparent that the trial court precluded Alton from resolving the issue of whether Escalante was properly hired as a law enforcement official under Westlake's civil service laws. The trial court stated that Escalante was an at-will employee, without the protections of the civil service *Page 21 
system. However, the purpose of the civil service system was not simply to distinguish between classified and unclassified employees. Its origin and purpose are set forth in the following paragraphs.
 {¶ 81} The Ohio civil service system originates from Section 10, Article XV, of the Ohio Constitution. It provides:
 {¶ 82} "[appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."
 {¶ 83} In Zavison v. Loveland (1989), 44 Ohio St.3d 158, 161, the Supreme Court of Ohio described the system and its purpose aptly: "[t]he purpose of the civil service system is to provide a `stable framework of public offices upon which a workable civil service system may be constructed' while `avoiding the traditional spoils system * * * and * * * providing a method of fair employee selection and promotion based upon merit and fitness.'" Further, the civil service laws "safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations." Curtis v. State ex rel. Morgan (1923), 108 Ohio St. 292, paragraph four of the syllabus.
 {¶ 84} Chapter 124 of the Revised Code sets forth a comprehensive statutory plan for civil service in the state of Ohio. Ohio Assn. ofPub. School Employees, *Page 22 Chapter No. 471 v. Twinsburg (1988), 36 Ohio St.3d 180, 187. However, under the Home Rule Amendment of the Ohio Constitution, "[m]unicipalities exercise the powers of local self-government to the fullest by adopting a charter * * *."[2] State ex rel. Bardo v.Lyndhurst (1988), 37 Ohio St.3d 106, 108.
 {¶ 85} "It is well-settled in Ohio that regulation of city civil service is within the powers of local self-government." Ohio Assn. ofPub. School Employees at 182-183. Moreover, "[t]he appointment of officers within a city's police force is an exercise of local self-government' within the meaning of those words as used in the Ohio Constitution. * * * The general rule is that in matters of local self-government, if there is a conflict between a charter provision and a statute, the charter provision prevails. * * *." (Citations omitted.)State ex rel. Bardo at 108-109.
 {¶ 86} In the case sub judice, Wallings testified that the city of Westlake has a city charter which governs its civil service system. Wallings said that he requested the mayor to appoint Escalante as Executive Assistant to the Chief of Police. Westlake City Council then passed two ordinances, essentially creating the position for Escalante and funding it. Wallings indicated that Escalante began as a part-time patrol officer in the detective bureau on March 15, 1999. He was made full-time Executive Assistant to the Chief of Police on January 10, 2000. As an executive *Page 23 
assistant, Wallings stated that Escalante is a fully credentialed police officer in charge of "vice and narcotics."
 {¶ 87} Alton was attempting to establish that the two ordinances, creating Escalante's position and funding it, violated Westlake's civil service system set forth in the Westlake Charter. However, the trial court interrupted Alton's counsel's line of questioning, before he could resolve the issue. Alton's counsel never conceded that he was wrong. In fact, he respectfully disagreed with the trial court several times, before the judge informed him that he just needed to "research civil service and research at-will employment," effectively concluding the motion to suppress hearing.
 {¶ 88} It is this writer's opinion that Alton's argument may have merit. In Gallagher v. Cleveland (1983), 10 Ohio App.3d 77, this court held that "[w]here an ordinance is in conflict with a charter provision, the charter prevails." Id. at paragraph one of the syllabus. We further held: "[a]n ordinance establishing the position of deputy chief of police is invalid and cannot be given effect where it creates a position which did not meet the requirements set forth in the city charter for a classified or unclassified civil service position." Id. at paragraph two of the syllabus.
 {¶ 89} In Gallagher, eleven police officers and taxpayers of the city of Cleveland initiated an action against the city, the mayor, and the Cleveland Civil *Page 24 
Service Commission. Plaintiffs sought a declaration that an ordinance, establishing the position of deputy chief of police, was null and void because it violated several provisions of Cleveland's civil service system in the Cleveland City Charter. Id. at 77. Plaintiffs further argued that two police officers had been "promoted" to the position of deputy chief within the meaning the city charter and that the appointment procedure followed did not meet the requirements set forth in the charter. Specifically, they maintained that civil service examinations had not been given and appointment had not been made from a list of eligible officers certified by the Cleveland Civil Service Commission.
 {¶ 90} This court concluded that, "the Cleveland City Council could not, consistent with * * * the charter, create the position of deputy chief as an unclassified position." Id. at 79. Therefore, since the ordinance violated the city charter, it was invalid.
 {¶ 91} In the case sub judice, the state argues, "[appellant's attempts to attack the merits of the detective's hiring does not vitiate his certification or his ability to effect arrests." I disagree. If Escalante is not a valid law enforcement officer, because he is not legitimately employed by the city of Westlake pursuant to its own charter, then he cannot be an affiant on a search warrant.
 {¶ 92} The state further contends that even if Escalante is not a law enforcement officer, the evidence should not be excluded since it is a violation of *Page 25 
state law, and not a constitutional error. This argument is also without merit. In the case cited by the state in support of its argument, the court held that there was no constitutional error because a date was omitted from a search warrant. State v. Remy, 4th Dist. No. 03CA2731,2004-Ohio-3630. This writer agrees that technical errors on a search warrant are not constitutional errors, and as such, would not justify the exclusion of evidence. However, this writer disagrees that the error here was a mere technicality.
 {¶ 93} In State v. Martins Ferry Eagles (C.P. 1979), 62 Ohio Misc. 3,6, the court held that "[a] secret service officer appointed by the prosecuting attorney does not have statutory authority to arrest and thus is not a law enforcement officer under Crim. R. 2 for the purpose of receiving and executing a search warrant under Crim. R. 41. Therefore, physical evidence seized under the authority of such a warrant was improperly obtained and must be suppressed."
 {¶ 94} Thus, it is my view that the trial court erred by not permitting Alton's counsel to complete his line of questioning. I would reverse and remand this case to allow Alton to finish the motion to suppress hearing. If Alton establishes that Westlake did indeed violate its own civil service laws, then the ordinance creating the position of Executive Assistant to the Chief of Police would have no effect, and Escalante would not be a law enforcement officer within the meaning of Crim. R. 41, R.C. 2901.01(11), and Crim. R. 2(J). *Page 26 
 {¶ 95} Moreover, the trial court did not make any findings of fact or conclusions of law. It simply stated in its Journal Entry, "Motion to suppress heard and denied. Case called for trial. Jury empaneled [sic] and sworn." Crim. R. 12(F) requires that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record." This court has reversed and remanded a trial court's granting of a motion to suppress where factual issues were left unresolved by the trial court see, e.g., Cleveland v. Benjamin, 8th Dist. No. 81108, 2002-Ohio-6826, at ?7-10.
 {¶ 96} In the case sub judice, there are factual issues that the trial court must resolve, including whether Escalante was properly hired according to Westlake's civil service laws, which would permit him to be a proper affiant on a search warrant.
 {¶ 97} Therefore, I would conclude that Alton's first assignment of error has merit. Accordingly, I would reverse and remand the judgment of the Cuyahoga County Court of Common Pleas. Upon remand, I would instruct the trial court to make findings of fact pursuant to Crim. R. 12(F).
[2] Section 3, Article XVIII, of the Ohio Constitution provides "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." *Page 1